Schutt *v.* Large.

---

SAME TERM.   *Before the same Justices.*

## SCHUTT *vs.* LARGE.

The surrender or cancelling of a deed, after delivery, will not reinvest the grantor with the title to the land conveyed.

A person whose title to land, though regular, on paper, is obnoxious to the objection of having been obtained by fraud, can not shield his title by conveying the premises to a *bona fide* purchaser, and afterwards purchasing them back. *Per* WELLES, J.

The recording acts protect none but innocent and *bona fide* purchasers and hold-

Schutt *v.* Large.

ers of real estate. And none should be deemed *bona fide* purchasers who purchase with knowledge, or notice, of a defect in the title.

The recording of a deed is constructive notice to all the world, of its existence. There is no difference between the effect of such notice, on a question of superiority of title, and an actual notice, so far as respects the person receiving such actual notice.

The title of a *bona fide* purchaser of premises for a valuable consideration, claiming to hold the same under a regular chain of subsequent recorded conveyances, will, under the operation of the recording acts, be preferred to the title of a person claiming the premises under and by virtue of a prior unrecorded conveyance from the same common source of title.

But in an action of ejectment against such subsequent purchaser, the questions of *notice* to him of the prior unrecorded deed, and of *good faith*, on his part, in making the purchase, are material questions, and should be submitted to the jury.

EJECTMENT for an undivided one third of seven acres and 46 rods of land in Manchester, Ontario county. The plaintiff claimed to recover as one of the heirs at law of Coonrod Schutt, his father. On the first day of November, 1834, one David Briggs and his wife conveyed to Coonrod Schutt by warranty deed, about 17 acres of land, including the premises in question. This deed was duly acknowledged, but was never recorded. Coonrod Schutt entered into possession of the premises described in the deed, and remained in possession until his death, in July, 1837. He left a widow, Dorothy Schutt, and three children, the plaintiff and two daughters. Cotemporaneously with the execution of the deed from Briggs and wife to Coonrod Schutt, the latter, with his wife Dorothy, executed to Briggs a mortgage upon the 17 acres of land described in the deed, to secure the sum of $363,39, being part of the purchase price of the land. The mortgage was duly acknowledged on the 3d of November, 1834, and recorded in the office of the clerk of Ontario county, September 1st, 1835. After the death of Coonrod Schutt, and in the fall of the year 1837, an arrangement was entered into between Briggs and Dorothy Schutt, the widow of Coonrod, to the effect that the latter should deliver up to Briggs the deed from him to Coonrod, which had remained in her possession since the death of her husband, to be cancelled; that Briggs should convey to Dorothy the seven acres in question, and

should give up to her, and satisfy of record, the mortgage from Coonrod and wife for the $363,39. This arrangement was carried into effect, and Briggs and wife, on the 17th of November, 1837, conveyed to Dorothy Schutt the seven acres in question, and the mortgage was satisfied of record, and the deed from Briggs and wife to Coonrod Schutt was delivered up by Dorothy to Briggs, to be cancelled. The remaining ten acres were afterwards sold and conveyed by Briggs to one Hardin. There was, at the time of this arrangement, about $300 unpaid of the mortgage debt, which was all due at the time of the death of Coonrod Schutt. This amount was secured to Briggs by Hardin, by a mortgage upon the ten acres sold to him by Briggs, and upon other lands. There was no other consideration for the satisfaction of the mortgage than the delivering up by Dorothy to Briggs of the deed from Briggs to her husband, to be cancelled. The defendant was in possession of the premises described in the declaration, at the time of the trial, and had been for two or three years. The case stated—"It was admitted on the part of the plaintiff, that the defendant was a *bona fide* purchaser of the premises in question, in good faith."

After the plaintiff had rested, the defendant gave in evidence, the above mentioned deed from Briggs and wife to Dorothy Schutt, dated 17th of November, 1837, which was duly acknowledged and recorded February 6, 1841. Also a warranty deed from Dorothy Schutt to Martin Schutt, dated 19th of April, 1841, for the premises described in the declaration, which was duly acknowledged, and was recorded April 24, 1841. Also, a warranty deed from Martin Schutt to Dorothy Schutt, for the same premises, dated 11th of January, 1843, duly acknowledged, and which was recorded 19th of September, 1843. Also, a warranty deed from Dorothy Schutt to Belinda Jane Peer, wife of Richard Peer, dated 18th of December, 1843, duly acknowledged the same day, and recorded 19th of December, 1843, for the same premises. Also, a deed of quit-claim, from Richard Peer and Belinda, his wife, to the defendant, dated 11th of April, 1844, acknowledged the same day, and recorded 4th of March, 1844, consideration $400, for the same premises. The defend-

Schutt *v.* Large.

ant went into possession of the premises in question, under the last mentioned deed. Mrs. Peer was a daughter of Coonrod Schutt. Evidence was given on the subject of the defendant's knowledge of the arrangement between Briggs and Dorothy Schutt, above detailed, before he purchased the premises of Peer and wife.

The cause was tried at the Ontario circuit, before Whiting, circuit judge, and the jury, under the charge of his honor, found a verdict for the plaintiff. The defendant now moved for a new trial.

*T. R. Strong,* for the defendant. I. The giving up of the deed of Briggs and wife, under the circumstances of the case, reinvested Briggs with the title to the premises in question, which, by the several conveyances introduced in evidence, passed to the defendant, who was therefore entitled to a verdict. (2 *John.* 84. 6 *Hill,* 469, *contra.*) II. If the giving up of the deed of Briggs and wife to Briggs did not invest Briggs with the title to the premises, the mortgage of Coonrod Schutt and wife to Briggs remained in force, and all interest in and claim to the premises under the same passed by the conveyances of Briggs and the subsequent grantees, given in evidence, to the defendant, who, having the mortgage interest, and being in possession, could not be dispossessed by ejectment. (2 *John.* 84. *Approved* 6 *Hill,* 469, *as to the right of a mortgagee in possession.* 7 *Cowen,* 13. 15 *Wend.* 248.) That the mortgage is in force as between the parties, see further, 5 *Wend.* 597 ; 1 *Hill,* 532. III. The deed from David Briggs and wife to Coonrod Schutt not having been recorded, if the defendant had not notice of it when he purchased, he would not, under the circumstances of the case, be affected by it, and under the operation of the recording acts, he was entitled to priority over any one claiming under that deed. (1 *R. S.* 746, 2d ed. *Id.* 756, *1st ed.*) IV. If either of the grantors of the premises through whom the defendant claims purchased in good faith and for a valuable consideration, without notice of the deed from David Briggs and wife to Coonrod Schutt, although the defendant might have had

Schutt *v.* Large.

notice of that deed when he purchased, he could not, under the circumstances of the case, be affected by it, and under the operations of the recording acts, was entitled to priority over the plaintiff. (7 *Cowen*, 360. 10 *John.* 186, 196.) V. The plaintiff claiming an undivided interest in the premises, and it appearing that the defendant had acquired the remaining interest in the premises, or some part thereof, the plaintiff could not recover without proof of an ouster by the defendant; which was not proven. (12 *Wend.* 494. 4 *Hill,* 116.)

A. *Worden,* for the plaintiff. I. Cornelius Schutt, the father of the plaintiff, died seised in fee of the premises in question, at which time the plaintiff was an infant, and his mother guardian in soccage; and as such, she was in possession, and could not, therefore, take a title and set it up against the title of the plaintiff, while the possession continued. II. The defendant took title and possession under the guardian in soccage, and such possession was that of the plaintiff, and the recording act has nothing to do with the case; because, when Dorothy Schutt took the deed from Briggs, she was in possession under, and in subservience to, the plaintiff's title. III. The defendant was bound to take notice of, and to know, the character of the possession he took from his grantor. He is chargeable with notice of the fact that Cornelius Schutt died seised leaving heirs, and that Dorothy Schutt continued in possession; and he is presumed to know the character of that possession, and that his grantor derived possession from her.

By the *Court,* WELLES, J. At the death of Coonrod Schutt, the title to the premises in question descended to his three children, of whom the plaintiff was one. Coonrod Schutt was seised, at the time of his death, by virtue of the deed to him from David Briggs and wife, as perfectly as if it had been recorded; and the cancelling of that deed, after his death, by his widow, did not reinvest Briggs with the title. If Coonrod Schutt, in his lifetime, had cancelled his unrecorded deed, with a view to revest Briggs with the title, and Briggs, at his request, had

conveyed the land to a third person, perhaps Coonrod, and those claiming by title afterwards derived from him, would have been estopped from denying Briggs' right to convey. There are a few cases which seem to support such a view; but they can only be upheld upon the principle of estoppel *in pais*. Admitting that to be so, it does not interfere with the general rule, that a grantor can not be reinvested with the title by a destruction of his grant.

The plaintiff, however, is not estopped from denying title in Briggs at the time he undertook to convey the premises to Dorothy Schutt; nor from repudiating the arrangement between her and Briggs. He was an infant at that time; and it does not appear that he assented to, or knew of it. He was incapable, by reason of his non-age, of binding himself by any assent, even if he had given it.

It is claimed that if the giving up and cancelling the original deed by Coonrod Schutt's widow, did not revest the title in Briggs, the mortgage from Schutt and wife to him remained in force, and that the money secured by it, being due, the mortgage was forfeited, and Briggs was thereby vested with the title, and authorized to convey the land. This can not be so. The mortgage was only a security for the debt, and a lien upon the land for that purpose. The mortgagor is looked upon as the owner of the land, until foreclosure. Besides, Briggs did not assume to hold the land as mortgagee. On the contrary, he relied upon the cancellation of the deed, which he had given, as reinvesting him with the title, satisfied the mortgage of record, and took security from Hardin for the debt due upon it. He did not pretend any right, as mortgagee in possession, to convey the land. The transaction was one of an entirely different character. The objection that the plaintiff did not prove an ouster, can not prevail. The defendant purchased and claimed the entire premises, and was in possession of the whole, in hostility to the plaintiff. He relied upon a title which utterly excluded the plaintiff, and amounted to a total denial of his right as a co-tenant. (2 *R. S.* 306, 7, § 27.)

The more important question remains to be examined; and

Schutt *v.* Large.

that is, whether, under the operation of the recording acts, the defendant's title is not superior to that of the plaintiff. The deed from Briggs to Dorothy Schutt was duly recorded, as were all the subsequent deeds, down to the defendant. When the defendant purchased, he found his grantors in possession under a regularly recorded title from Briggs, through whom the plaintiff claims title. The statutes on this subject are as follows: "Every conveyance of real estate, within this state, hereafter made, shall be recorded in the office of the clerk of the county where such real estate shall be situated; and every such conveyance not so recorded shall be void against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded. (1 *R. S.* 756, § 1.) "Every grant shall also be conclusive as against subsequent purchasers from such grantor or from his heirs, claiming as such, except a subsequent purchaser in good faith and for a valuable consideration, who shall acquire a superior title by a conveyance that shall have been first duly recorded." (*Ib.* 739, § 144.) These sections, although passed at different times, took effect at the same time. They are *in pari materia*, and must be construed with reference to each other.

The question is, who or what class of subsequent purchasers are protected? In *Raynor* v. *Wilson*, (6 *Hill*, 473,) I understand Beardsley, justice, to hold that none are protected but successive purchasers from the same grantor. That a conveyance will not be void, under the statutes, by reason of not being recorded, as against a subsequent purchaser, unless the subsequent conveyance is from the same grantor as in the first or unrecorded conveyance. If this construction is to prevail, much less security than has been generally supposed, is given to purchasers by examinations of titles in the offices of county clerks. In this case, the defendant procured the recorded title to be examined by the clerk of Ontario county, (in which county the land was situated,) whose certificate presented a regular deduction of title from Briggs to Mrs Peer, who joined with her husband in conveying the premises in question to the defendant. In the

case referred to, it was not necessary to maintain the doctrine, which it is supposed to assert, in order to produce the same result or decision of the case. It was shortly this: On the 5th of October, 1841, one Penny, who then owned the premises, conveyed them to the plaintiff, but the deed was never recorded. In September, 1842, the plaintiff sold the premises to the defendant, and instead of conveying them himself, he redelivered the deed to Penny which he had received from him, which was thereupon destroyed, and Penny executed a deed of the premises to the defendant's wife, which was duly recorded. The plaintiff recovered at the circuit, and a motion for a new trial was denied, on the ground that the recording acts did not apply to the case, and that the defendant could not be regarded as a *bona fide* purchaser, as he had full knowledge of the deed from Penny to the plaintiff, at the time of his purchase of the premises. It was simply a question of superiority of title between the parties, both claiming under deeds from Penny; that to the defendant's wife being duly recorded, and the deed to the plaintiff not only not having been recorded, but it had been redelivered to the grantor and destroyed. But the whole transaction, and all the circumstances, were known to the plaintiff, and therefore the question of priority of record, or whether the plaintiff's deed had been recorded at all, became entirely immaterial.

In the present case, Dorothy Schutt was not a *bona fide* purchaser of Briggs. She knew that he had conveyed the premises to her husband, and that the latter had died seised of them. Her conveyance to Martin Schutt, and his conveyance back to her, did not make her title any better, even admitting Martin Schutt to have been a *bona fide* purchaser. She was a party to the transaction with Briggs, which was a fraud upon the heirs of her late husband; and it seems to me that it will not do to allow a person, whose title, though regular on paper, is nevertheless obnoxious to objections of this character, to shield his title, by conveying the premises to a *bona fide* purchaser, and afterwards purchasing them back. It would be leaving a door open through which great frauds might be perpetrated,

Schutt *v.* Large.

The chain of title is broken, or rather does not proceed from, or connect with, the true source. None should be deemed *bona fide* holders who purchase with knowledge or notice of the defect in the title.

But it is insisted that the defendant is a *bona fide* purchaser for a valuable consideration, and is protected under the recording laws; and further, that Peer and wife, from whom the defendant received his conveyance, being *bona fide* purchasers from Dorothy Schutt, the title by that conveyance passed to the defendant discharged from the taint which attached to it in the hands of Dorothy, whatever may have been the knowledge which the defendant had of the transactions relating to the title of Dorothy. That after the title once becomes purified by force of the recording laws, it must remain unaffected by any previous contamination, notwithstanding it may afterwards pass into a person chargeable with notice, or even connected with the fraud. I can not subscribe to this last position. The statute protects none but innocent and *bona fide* purchasers and holders. If the defendant knew, or had notice of, the state of the title, or rather, of the defect of title in Dorothy Schutt, before he purchased, he is not to be regarded in the light of a *bona fide* purchaser, although nothing appears in the case to bring home to Peer and wife any knowledge of such defect.

As soon as the defendant received notice of the conveyance from Briggs to Coonrod Schutt, it was the same to him as if that conveyance had been then recorded. It is impossible, I think, to distinguish this case, in this aspect, from *Van Rensselaer et al.* v. *Clark,* (17 *Wend.* 25.) In that case, Derick Schuyler owned the premises in question on the 25th of August, 1794. On that day he conveyed them to James Van Rensselaer, the plaintiff's father, but the deed was not recorded until January 2d, 1804. On the 2d of July, 1799, Derick Schuyler conveyed the same premises to Philip H. Schuyler, whose deed was recorded October 25th, 1802. On the 2d of April, 1805, Philip H. Schuyler conveyed to Samuel Clark, who, in 1806, conveyed to James Emott, and Emott, in 1833, conveyed to Matthias Miller. The defendant was in possession at the commence-

ment of the suit, as tenant to Miller. Philip H. Schuyler, at the time of the conveyance to him, had actual notice of the deed, at that time unrecorded, from his grantor Derick Schuyler, to James Van Rensselaer. The court held that Philip H. Schuyler, by reason of the notice, was not a *bona fide* purchaser; and that as the deed to James Van Rensselaer was recorded before the one from Philip H. Schuyler to Clark was given, the latter took the land chargeable with notice of the deed from Derick Schuyler to James Van Rensselaer, the plaintiff's ancestor. It was not claimed that either Clark, Emott, or Miller, had actual notice or knew of the deed from Derick Schuyler to James Van Rensselaer. Upon examinations of the clerk's office, they found a regular recorded title in their respective grantors. It is true, that the records informed them that Derick Schuyler had conveyed the premises to Van Rensselaer previously to the conveyance to Philip Schuyler, but the same evidence proved that the deed to the latter was first recorded, and the statute declared the first deed in such case void, unless for matter *in pais*, of which they were entirely ignorant. The recording of a deed is constructive notice to all the world of its existence. There is no difference between the effect of such notice on a question of superiority of title, and an actual notice, as far as respects the person receiving such actual notice.

It was argued in the case last referred to, that Clark bought of Schuyler on the faith of finding that *his deed* was first recorded, and that he should not be held to look farther and run the hazard of actual notice to Schuyler. But it was held otherwise, by the court; and they decided that to entitle a purchaser to protection under the recording acts, he must be a *bona fide* purchaser in the strict sense of the term. He must not have notice when he buys, as notice is inconsistent with *bona fides*. (*Jackson* v. *Post*, 15. *Wend.* 588. *Tuttle* v. *Jackson*. 6 *Id.* 226.)

In the present case, if the defendant was a *bona fide* purchaser for valuable consideration, I think he should be protected. The case states that it was admitted on the trial, on the part of the plaintiff, that the defendant was a *bona fide* purchaser in good faith; and the defendant offered to prove that he paid the

sum of $400 for the premises in question, that being the consideration mentioned in the deed to him; which evidence was excluded, on the ground that it was unnecessary to prove the consideration. Notwithstanding this admission, proof was given by the plaintiff, tending strongly to show, that at the time the defendant received the deed from Peer and wife, he was informed of the transactions between Briggs and Mrs. Schutt, after the death of her husband, in relation to the titles, sufficient probably, if the jury believed the witnesses, to put him upon inquiry; which is enough, in such cases, to take away the plea of good faith.

But this question was withdrawn by the circuit judge entirely from the jury, who were instructed that if they were satisfied that the defendant was in possession at the commencement of the suit, the plaintiff was entitled to recover. The question of notice to the defendant of the deed to Coonrod Schutt, and the manner in which his widow attempted and claimed to have acquired the title, was one peculiarly within the province of the jury to decide. The judge decided it was an immaterial question; whereas it was the main, and I think the most material, one for the jury in the case.

A new trial is granted, with costs to abide the event.

