## Simpson *v.* Montgomery, *et al.*

EQUITY JURISDICTION—*mistakes and accidents.* Where a deed is *acknowledged* before a commissioner of deeds for Arkansas, who is also a commissioner of deeds for Mississippi, and who *inadvertently signed himself* as the latter, equity affords relief from the mistake.

To *correct* and relieve against *mistakes* and accidents is one of the principal objects and most *ordinary duties* of courts of equity.

This relief is afforded not only against original parties, but also against those *claiming* under them, with notice of the facts.

The *only evidence* upon which a deed can be admitted to record is the *certificate of acknowledgment* by the proper officer.

VENDOR'S LIEN. The mere *assignment* by the vendor of land of a note given for the purchase money of the land, *does not transfer* to the assignee the *vendor's lien.*

CHAMPERTY. Where a trustee in a deed of trust sells the lands of M. to S., and the creditors of M. credit the amount of the bid on the notes of M. held by them, but agree not to exact payment of the bid unless the title in S. should prove to be good, the *agreement* is not *champertous.*

In such a case, the object of the *sale* is as fully *accomplished* as if the money had been paid to the trustee, and by him to the creditors.

*Appeal from Crittenden Circuit Court.*

Hon. JAMES M. HANKS, Circuit Judge.

GARLAND & NASH, for appellant.

This case, in its general features, is like that of *Martin v. Shell*, 19 *Ark.*, 139.

The mistake, in this case, is of no moment. A mere substantial compliance with the statute is all that is required. *Jacoway v. Gault*, 20 *Ark.*, 190. The *fact* of acknowledgment, and the identity of the party acknowledging, are the essential features, and, these appearing, it is sufficient. *Bryan v. Ramsey*, 8 *Cal.*, 461; *ib.*, 581; *Hopkins v. Delaney*, *ib.*, 85; *ib.*, 511; and these being complied with, a liberal construction is given to certificates of acknowledgment. *Morse v. Clayton*, 13 *S. & M.*, (*Miss.*,) 373; *Crowley v. Wallace*, 12 *Mo.*, 143; and even where *justices of the peace* do not, in their certificates, describe themselves as such, the acknowledgment is good. *Welles v. Cole*, 6 *Gratton*, (*Va.*,) 645; and the official seal wanting will not vitiate the acknowledgment. *Pillow v. Roberts*, 13 *How.*, (*U. S.*,) 472. And it may be laid down, as a general if not universal rule, that no mere clerical error in the officer will avoid the acknowledgment. *Ives v. Kimball*, 1 *Mann*, (*Mich.*,) 308; *Monroe v. Arledge*, 23 *Texas*, 478; *Cavender v. Smith*, 5 *Clarke*, (*Iowa*,) 157; and the misdescription of the office held by the person taking the acknowledgment is altogether immaterial. *Wray v. McKeenan*, 6 *Humph.*, (*Tenn.*,) 207; *Beckel v. Pettigrew*, 6 *Ohio*, (*N. S.*,) 247.

The court of chancery, having all the parties interested before it, can arrest this mistake, so as to cure all difficulties. *Johnston v. Jones*, 1 *Black.*, (*U. S.*,) 209; *Simmons v. North*, 3 *S. & M.*, (*Miss.*,) 67; *Whitehead v. Brown*, 18 *Ala.*, 682; *Stone v. Hale*, 17 *Ala.*, 557; *Davis v. Rodgers*, 33 *Maine*, 222; *Wall v. Arrington*, 13 *Ga.*, 88. And, as affecting one having notice of the deed or mortgage, though defective, it is always corrected

in this way. *Cases sup.; Wardsworth v. Wendell,* 5 *Johns. Chy.,* 224, 230; so that, by these cases, the appellant had in truth his record, and the others were bound by it; and, although this deed may have been defective, yet it appears from the bill that due notice of Simpson's claim was fixed on the others. 5 *Johns. Chy., sup.; Byers & Patterson v. Engles,* 16 *Ark.,* 543. *Hornor v. Hanks,* 22 *ib.,* 572. The bill, being confessed by the demurrer, must be taken as true; and they show the defendants below (appellees here) did not hold the position of purchasers, without notice, for value.

Upon the question of depriving Simpson of his rights here, because merely of the error or mistake of Mr. Hill, we state simply what this court will, at once, recognize as almost an axiom of the law, that never will courts prejudice parties by the negligence or mistakes of officers when the facts are or can be otherwise disclosed. 9 *How.,* (*U. S.,*) 333; 5 *Cranch,* 234; 5 *And.,* 235.

WATKINS & ROSE, for appellee.

Where a decree *pro confesso* has been rendered, if the defendant does not move to set it aside within the three first days of the next term, it becomes, by its own operation, absolute. *Smith v. Yell,* 4 *Ark.,* 293; 1 *Hoff. Ch. Pr.,* 551.

Though a decree be erroneous, yet it can not be collaterally questioned. *Evans v. Percifull,* 5 *Ark.,* 424.

The plaintiff must recover on the strength of his own title, and not on the weakness of that of the defendants. *Rice v. Harrell,* 24 *Ark.,* 402.

The contract of the plaintiff was champertous, and will not be regarded in chancery. *Bowman v. Burnley,* 2 *McLean,* 376; *Giddings v. Eastman,* 1 *Clark Ch.,* (*N. Y.,*) 19; *Ward v. Bokkelen,* 2 *Paige Ch.,* 289; *Slade v. Rhodes,* 2 *Dev. & Bat. Ch.,* 24.

A mortgage is no lien as against strangers, until it is acknowledged and recorded, even though they may have actual notice of its existence. *Gould's Dig.,* ch. 117, sec. 2; *Maine v.*

*Alexander*, 9 *Ark.*, 112; *Jacoway v. Gault*, 20 *id.*, 190; *Hannah v. Carrington*, 18 *id.*, 105.

No principle of law is more clearly settled than that the registry of a conveyance must have been in compliance with the law, and that otherwise the registry is to be treated as a mere nullity, and that it will not affect a subsequent purchaser or incumbrancer. *Astor v. Wells*, 4 *Wheaton R.*, 466; 1 *Binney's R.*, 40; *Frost v. Beekman*, 1 *Johnson's Ch. R.*, 300; 1 *Story's Eq. Jurisprudence*, sec. 404; *Farmer's Loan and Trust Co. v. Maltby*, 8 *Paige Ch. R.*, 361; 5 *Greenleaf's R.*, 272.

And equity will never interfere to correct a mistake in any written instrument, except as between the parties and their privies having *legal* notice of the mistake at the time their titles accrued. *Carroll v. Duval*, *ubi. sup.*, 1 *Story's Eq. Jur.*, sec. 165; and cases there cited.

A corrected registration operates against creditors and subsequent purchasers only from the date of such correction. *Baldwin v. Marshall*, 2 *Humph.*, 116.

The certificate can not be changed by parol evidence. *Wright v. Bundy*, 11 *Ind.*, 398; *Ridgely v. Howard*, 3 *Har. & McHen.*, 290; *Woodyard v. Threlkeld*, 1 *A. K. Marsh.*, 10; *Saxton v. Nimms*, 14 *Mass.*, 315; *Thayer v. Stearns*, 1 *Pick.*, 109.

The certificate of a justice taking an acknowlegment can not be qualified by parol testimony, unless fraud is shown. *Jamison v. Jamison*, 3 *Whart.*, 457; *Lloyd v. Giddings*, *Wright*, (*Ohio*), 694; *Ellis v. Madison*, 1 *Shep.*, 312; *Crommett v. Pearson*, 6 *id.*, 344; *State v. McAlpen*, 4 *Iredell*, 140; *Blaisdell v. Briggs*, 10 *Shep.* 123; *Sheftall v. Clay*, *T. U. P. Charlton*, (*Ga.*,) 227.

The fault or fraud of the officer in the recording of a deed concludes the rights of the parties to the deed as to third persons. *The remedy of the parties is against the officer.* *Sawyer v. Adams*, 8 *Vermont*, 172.

"The acknowledgment of a deed must appear on it, and can not be proved by parol evidence." *Pendleton v. Button*, 3 *Conn.*, 406.

"Nor can any defect in the certificate of the magistrate be helped by parol evidence." *Hayden v. Wescott,* 11 *Conn.,* 129.

A public officer should not be permitted to impeach his own official certificate. *Central Bank v. Copeland,* 18 *Md.,* 305.

Even the recorded certificate can not be introduced to alter the certificate written by the clerk on a mortgage, the latter being the highest evidence which the nature of the case admits of. *Ames v. Phelps,* 18 *Pick.,* 314. The clerk's certificate is conclusive. *Tracy v. Jenks,* 15 *id.,* 465.

"The registration system is one of positive law, and *exacts from a court of chancery obedience as implicit as from a court of common law,* and must be expounded and enforced in both alike. *Defective probates of deeds can not be aided in either,* by the production of probates upon other instruments *or other proof."* *Evans v. Wells,* 7 *Humph.,* 559.

"A deed can not be recorded on parol proof of its proper acknowledgment. *Elwood v. Klock,* 13 *Barb.,* 50. In this case the court say, that the certificate of acknowledgment is a record, which takes the place of the ancient fine of the common law, and that "parol evidence would not be received to impeach the record, and would be inadmissible to support it." Such a certificate is conclusive in the absence of fraud. *Hartley v. Frosh,* 6 *Texas,* 208.

A defective certificate of acknowledgment can not be aided by a court of equity nor by a parol proof. *Chanvin v. Wagner,* 18 *Mo.,* (3 *Bennett,*) 531 ; *Gill v. Fauntleroy's Heirs,* 8 *B. Monroe,* 178 ; *Blackburn v. Pennington, id.,* 220 ; *Elliott v. Piersol,* 1 *Peters,* 338 ; *Barnett v. Shackleford,* 6 *J. J. Marsh.,* 532 ; *Jourdan v. Jourdan,* 9 *Serg. & Rawle,* 274 ; *Butler v. Buckingham,* 5 *Day,* 504.

"A court can not make a valid registry of a deed in any other manner than that prescribed by the statute." *Caldwell v. Head,* 17 *Missouri,* (2 *Bennett,*) 561.

24

HARRISON, J.

The material facts in this case are these: William Park and wife, Henry Fitzgerald and wife, and James Simpson, on the 25th day of October, 1860, sold and conveyed to Andrew J. Montgomery, for the price of $9,300, certain lands in Crittenden county, and acknowledged in their deed the receipt of the purchase money. Seven thousand two hundred and one dollars and eighty-four cents ($7,201$\frac{84}{100}$) of it, however, were not in fact paid, and for that amount Montgomery gave his five notes, as follows: To William Park, one for $1,590$\frac{66}{100}$, payable in one year; and one for $1,735$\frac{26}{100}$, payable in two years; to James Simpson, one for $1,590$\frac{66}{100}$, in one year, and one for $1,735$\frac{26}{100}$, in two years; and one for $550, payable to his own order, in one year, and indorsed in blank by him.

To secure the payment, Montgomery conveyed, by deed of the same date, the lands to James G. Barbour, in trust, that should default be made in the payment of any of the notes at maturity, to sell the same at auction, for cash, and to pay and satisfy the notes, not only such as should be due, but those not due, discounting the latter at the rate of six per cent. per annum. Both deeds were acknowledged and recorded, but the commissioner of deeds, before whom the latter was acknowledged in the city of Memphis, being also a commissioner of deeds for the State of Mississippi, through inadvertence and mistake, described himself, in his certificate of acknowledgment, as "commissioner of deeds for the State of Mississippi," appointed as such by the Governor of that State. On the 19th day of November, 1860, and after the latter deed had been admitted to record, Montgomery sold and conveyed an undivided third part of the lands to Newton Ford, who, on the 10th day of December following, sold and conveyed the same back to Montgomery, and on the same day Montgomery sold and conveyed the whole to Robert B. Alexander. Montgomery's deed to Alexander also acknowledged the receipt of the purchase money; and Alexander, when he purchased, had

notice of the mistake in the certificate, and all the above mentioned facts.

All the notes having matured and being unpaid, Barbour, at the request of the holders, proceeded to execute the trust; and, after giving notice of the sale, as prescribed in the deed, on the 16th day of January, 1866, sold the lands at auction, and James G. Simpson, the complainant, became the purchaser, at the sum of $4,000, and under power and authority given by the deed, Barbour executed a deed of conveyance of them to him.

This deed, like the other, recited the payment of the money; but none was actually paid to the trustee. Park and Simpson, the holders of the notes, except the one for $550, crediting the amount of the bid on the notes, and agreeing with the complainant, on account of doubt and uncertainty about the title, not to exact the money from him, unless it should prove good and indefeasible.

After the sale by the trustee, and after his deed to the complainant had been duly recorded, Josiah D. Williams filed a bill in the Crittenden circuit court to subject the lands to an alleged lien for the payment of a note for $1,650, which Alexander had given Montgomery for a part of the purchase money in the sale to him, and which he held as assignee. No defense being made to his suit, a decree was rendered according to the prayer of his bill, and the lands were sold, and bought by him for the amount of the decree, and a deed was made him under the authority of the court.

Complainant's bill further charged that the lands were wild and unimproved, and not in the actual occupancy or possession of any one; that Williams set up and claimed title to said lands under his purchase; that his claim, and the circumstances before stated, had cast a cloud upon complainant's title; and it prayed that his equities in the lands might be established, and his title to the same cleared from the cloud and quieted, and that, if that relief could not be afforded him, he be relieved from the payment of the money he owed William Park and James Simpson.

Montgomery and his wife, Williams and wife, and Alexander, filed a demurrer; the other defendants made no defense. The court sustained the demurrer and dismissed the bill, and the complainant appealed.

The mere assignment of a note given for the purchase money of land, which the vendor has conveyed by deed to the vendee, does not transfer or carry with it the lien of the vendor for the payment of the purchase money. *Shall, admr., et al., v. Biscoe, et al.,* 18 *Ark.,* 142; *Williams v. Christian,* 23 *ib.,* 255 ; *Crawley v. Biggs, et al.,* 23 *ib.,* 563. Williams, therefore, acquired no lien by the assignment of Alexander's note to him ; and, however conclusive his decree may be against Montgomery and Alexander, who were parties to the suit but made no defense, the rights of the complainant, who was not a party, are not in the least affected by it, or any proceeding under it. 1 *Sto. Eq. Jur., sec.* 407; *Sto. Eq. Pl., sec.* 72 ; *Trammell, et al., v. Thurmond, et al.,* 17 *Ark.,* 203 ; *Hannah, admr., v. Carrington, et al.,* 18 *ib.,* 85 ; 1 *Green. Ev., sec.* 522, 523.

The only evidence upon which a deed can be admitted to record is the certificate of proof, or acknowledgment of a court or officer, authorized by the statute to take such proof and acknowledgment, *sections* 12 to 16, 22, 33, and 34, *ch.* 37, *Digest; Jacoway v. Gault,* 20 *Ark.,* 190 ; *Biscoe v. Byrd,* 15 *Ark.,* 655; *Blagg v. Hunter,* 15 *Ark.,* 246 ; *Trammell, et al., v. Thurmond, et al.,* 17 *Ark.,* 203 ; *Hester's Lessees v. Fortner,* 2 *Binn.;* 40 ; *Johnson's Lessee v. Hains,* 2 *Hamm.,* 25.

As no such certificate accompanied the deed of trust, it was not properly admitted to record, and consequently did not become constructive notice to the world. No question could possibly have arisen had it been duly recorded, and as the mistake of the commissioner of deeds, who took the acknowledgment, was the sole cause of the omission, the whole controversy rests upon that point.

To correct and relieve against mistakes and accidents, is one of the principal objects, and most ordinary duties, of courts of equity. Judge STORY, speaking of the jurisdiction of courts of

equity arising from accidents, says: "By the term *accident* is here intended not merely inevitable casualty, or the act of Providence, or what is technically called *vis major*, or irresistible force, but such unforeseen events, misfortunes, losses, acts or *omissions* as are not the result of any negligence or misconduct in the party."

Lord Cowper, speaking on the subject of accident as cognizable in equity, said: "By accident is meant when a case is distinguished from others of the like nature by unusual circumstances;" a definition quite too loose and inaccurate, without some further qualifications; for it is entirely consistent with the language, that the unusual circumstances may have resulted from the party's own gross negligence, folly or rashness. 1 *Sto. Eq. Jur.*, sec. 78. Again, in speaking of the jurisdiction founded upon the ground of mistake, he says: "This is sometimes the result of accident, in its large sense; but as contradistinguished from it is some unintentional act or omission, or error, arising from ignorance, surprise, imposture, or misplaced confidence." *Ib.*, sec. 110. In the case before the court neither the *cestui que trust*, nor the trustee, can be charged with any negligence or misconduct. The mistake was not theirs, and they had no agency in producing it. It was evidently a clerical error, and a very unusual one, the probability of which was not likely to occur to the mind of any one, of such a character as not readily to be discovered, and was made by an officer, in the performance of his duty—in whose skill and correctness they had a right to confide.

That relief is afforded in cases of mistake, such as this, is shown by the following remarks of the author just quoted: "In like manner, as equity will grant relief in cases of mistake in written instruments, to prevent manifest injustice and wrong, and to suppress fraud, it will also grant relief and supply defects, where, by mistake, the parties have omitted any acts or circumstance necessary to give due validity and effect to written instruments. Thus equity will supply any defect of circumstances in conveyances, occasioned by mistake; as of liv-

ery of seizin in the passing of a freehold, or of a surrender in case of a copy-hold, or the like; so, also, misprisions and omissions in deeds, awards and other solemn instruments, whereby they are defective at law." 1 *Sto. Eq. Jur.,* sec. 11, *p.* 166.

And this relief is not only afforded against original parties, but also against those claiming under them, as heirs, devisees, judgment creditors, or purchasers from them with notice of the facts. 1 *Sto. Eq. Jur.,* sec. 165; *Simmons, et al., v. North, et al.,* 3 *S. and M.,* 67; *Governeur v. Titus,* 6 *Paige,* 347.

No notice, however, to Ford, of the mistake, is charged in the bill, and it is to be presumed that he was a *bona fide* purchaser without notice; but the superior equity he acquired as an innocent purchaser was not transmitted to Montgomery, by the reconveyance to him, and from him to Alexander and Williams in succession; but the same equities his vendor had, when he sold to Ford, reättached upon the property when conveyed back to him. 1 *Sto. Eq. Jur.,* sec. 410; *Schult v. Large,* 6 *Barb.,* 373; 2 *Lead. Cases in Eq.,* 184; *Kennedy v. Daly,* 1 *Sch. and Léfr.,* 379.

Montgomery, being a party to the deed of trust, and Alexander, purchasing with notice of the mistake in the commissioner's certificate, by which the deed of trust was prevented from being duly recorded, and Williams, with notice of complainant's title, it is evident that complainant's equity is superior to that of either, and the equitable being united with the legal title in him, his title to the lands in controversy is absolute and indefeasible.

But it is objected, because the complainant did not pay the money, and William Park and James Simpson agreed with him not to exact it of him unless his title should prove to be good and indefeasible, that his purchase of the lands was champertous, and he has no right to maintain a suit respecting them. We are unable to perceive a single feature of champerty or any thing unlawful, immoral or against public policy in the transaction. The lands were not sold by these parties, but by Barbour, the trustee appointed by Montgomery, at

auction, where any person was at liberty to bid and might have become the purchaser, in the execution of the trust, and with no view or purpose of bringing or carrying on a suit; and the sum at which they were bid off was placed as a credit on the notes, and the end of the sale as fully accomplished as if the money had been paid to the trustee and then paid over by him to the holders. *Goodwin v. Floyd*, 10 *Yerger*, 520.

The court below erred in sustaining the demurrer to the bill and in dismissing the same. Its decree is therefore reversed, and said demurrer is overruled, and the case remanded for further proceedings.