## Sophia Dubois and others v. Daniel J. Campau and others.

*Ejectment: Evidence: Order of proof: Discretion.* In an action of ejectment it is not error to admit in evidence a deed from the *city,* for the non-payment of paving taxes, without first proving the regularity of the proceedings for the assessment and levying of the taxes, whether such deed be *prima facie* evidence of the regularity of such proceedings or not. This is a question simply of the order of proof, and in the absence of any specific exception that the regularity of such proceedings was not proved at all, the discretion of the court below on that subject will not be reviewed.

*Charge to the jury.* A charge to the jury in an ejectment suit "that the plaintiffs cannot recover in the action, because the evidence does not show any right to recover the possession of any share, interest or portion of the premises, at the commencement of the suit," takes the whole case away from the jury, and can only be sustained where there is no evidence whatever tending to make out a case for plaintiffs.

*Deed construed.* Where the owner of a tax-title joins with his wife, who, as one of several heirs-at-law of a decedent, had an interest in the lands in question, together with other lands, in a conveyance to another heir of said decedent, made for the purpose of a partition of said estate among the heirs; and the property in said conveyance is described as "all the right, title, and interest of the parties of the first part, in and to all the following described real estate situate," etc., of which the decedent died seized or possessed [describing the lands], together with all and singular the hereditaments, etc.; "and all the estate, right, title, interest, claim or demand whatsoever of the said parties of the first part, either in law or in equity, of, in and to the above bargained premises etc.," such conveyance, as between the owner of such tax title and the grantee, transfers the tax-title interest to the latter.

*Tax-title: Heirs of deceased person.* The heir of a decedent, who has no title except that derived from the decedent, stands in the same position, with reference to a tax-title obtained upon the lands of such decedent during his lifetime, and which has since his death been transferred to such heir, that the decedent himself would have occupied, had he been still living and had the tax title been conveyed to him.

*Taxes: Possession: Tax-title.* One in possession of land, claiming it as his own, is bound to pay the taxes imposed upon it, which become due during

such possession; and if he neglects this duty and suffers the land.to be sold for taxes and bids it in himself, he can acquire no title thereby as against any one, and certainly not as against a co-tenant—such sale being based upon his own default.—*Lacey v. Davis*, 4 *Mich.*, 140.

*Tenant in common purchasing at tax sale.*  One tenant in common, without reference to the question of possession, cannot procure the title of his co-tenant by purchasing in the land for taxes, a part of which were upon his own share; as such sale is based *in part* upon his own default.—*Page v. Webster*, 8 *Mich.*, 263 ; *Butler v. Porter*, 13 *Mich.*, 292.

If such co-tenant procure another person to bid in the property for him and to take the deed, this will give him no greater right.

*Duty of tenant in common in possession of whole estate, as to payment of taxes.*  It is the duty of a tenant in common in possession of, and using, the whole estate to keep down the taxes on the whole during his occupancy; and he cannot take advantage of his own violation of this duty, to acquire the interest of his co-tenants in the land, by purchase at a tax sale.

*Tenant in common not in possession: Taxes.*  Whether a tenant in common, not in possession, and hence under no obligation to pay the taxes of his co-tenant, can purchase of a stranger, who, without collusion with him, has acquired it on his own account, a tax-title based upon the default of his co-tenant and set it up against such co-tenant:—*Quære?*

*Tenant in common purchasing, from bona fide holder, a tax-title based on his own default.*  Where a tenant in common, in possession of, and using, the whole estate, fails to pay the taxes and a stranger purchases the same at a tax-sale in such a manner as to be himself entitled to assert his tax-title against all the owners, the purchase of such tax-title by such tenant only corrects the wrong he had before committed and operates as a payment of the tax.  He cannot set up such tax-title against his co-tenants.

This case is distinguished from that of *Page v. Webster*, 8 *Mich.*, 264.

*Tax deed—whether prima facie evidence of regularity of proceedings.*  Whether a conveyance made by the city of Detroit upon a sale for non payment of paving taxes is *prima-facie* evidence of the regularity of the proceedings for the assessment and levy of the taxes:—*Quære?*

*Submitted on briefs January 10.  Decided April 2.*

Error .to Wayne Circuit.

This was an action of ejectment, brought by plaintiffs in error against defendants in error, to recover the undivided third part of lot number ninety-three in section one, of the governor and judges plan of the city of Detroit.

Plaintiffs proved title in Dennis Campau long since deceased, to the whole lot, by deed from the governor and judges to him, dated April 26, 1809.  They also introduced evidence tending to show that some of the plaintiffs were heirs, and that others were the devisees of other heirs, of said Dennis, deceased (who died intestate), who inherited one undivided third part of the lot, and that Joseph Campau,

24 mich.—46

now deceased, inherited one-sixth part of the lot, and purchased of other heirs other three-sixths of the same; that said Joseph Campau (now deceased) was duly appointed administrator of the estate of said Dennis, and qualified as such in January, 1818; that he took possession of said lot in 1819 or 1820, and continued to hold the same until his death in 1863. It was admitted that in 1866 deeds were interchanged by, and amongst, the children and heirs of said Joseph Campau, by which they conveyed to each other certain parts of the real estate claimed to be owned by him at the time of his decease, by which deeds the whole thereof was conveyed; and thereby the other children (and heirs) conveyed, or purported to convey, to the defendant Daniel J. Campau, in fee, the premises described in the declaration.

Evidence was introduced tending to show that the other defendants were in possession of distinct parts in severalty, either as tenants of, or claiming to hold under leases executed by, said Joseph Campau in his lifetime, or by his administrators.

Plaintiffs having also adduced evidence tending to show that Joseph Campau, in his lifetime, in the year 1834, when called upon for a list of his property by the assessors of taxes, handed to said assessors a list of property, in which the premises in question were described, to be assessed to Dennis Campau; also that in 1837, 1839 and 1840, the premises were assessed to "Dennis Campau, Joseph Campau agent."

Defendants introduced evidence showing the use and occupation of said premises by said Joseph Campau and those claiming under him, for such a length of time and in such a manner (claiming to own, paying taxes and collecting rents) as would tend to show that the rights of the plaintiffs, if they had any, were barred by the several statutes of limitation of the late territory, and present state, of Michigan.

The defendants also offered in evidence a certain conveyance, duly acknowledged and recorded, from the city of Detroit, by Charles Peltier, collector of said city, to Francis Palms, purporting to convey to said Palms the lot in question for the term of one hundred years, reciting that the same was sold to him on the 25th of June, 1856, for delinquent paving tax assessed in 1855, and in consideration of sixty-seven forty-five one-hundredths dollars bid by him for the same, which deed purports to have been executed on the 25th of June, 1857; to which the plaintiff objected for the reason that such conveyance was not of itself *prima facie* evidence of the regularity of the proceedings, etc., which objection was overruled by the court.

Thereupon, the plaintiffs introduced and read in evidence the record of a conveyance from said Francis Palms and others to said Daniel J. Campau. This was a deed from all the other heirs of Joseph Campau, to said Daniel J.; the wife of Palms was one of those heirs, but *he* was not. For the contents of this deed, and the several requests to charge, as well as the charges given and refused, reference is made to the opinion, which sufficiently states them.

*D. C. Holbrook,* for plaintiffs in error.

*S. Larned, Henry M. Cheever,* and *Theodore Romeyn,* for defendants in error.

CHRISTIANCY, CH. J.

The first error assigned is, that the court allowed the conveyance made by the city of Detroit, to Francis Palms, for the non-payment of paving taxes, to be read in evidence, without any proof of the regularity of the proceedings for the assessment and levying of the taxes.

But, whether the deed was *prima facie* evidence of the regularity of such proceedings or not, there was no error

in admitting the deed itself in evidence at the stage of the
·case in which it was introduced; since if not *prima facie*
evidence of such regularity, it was just as competent for. the
defendants first to prove the deed and then to follow it up
with evidence of the regularity of the proceedings, as it
was to prove first the regularity and then the deed. No
error is assigned for the specific reason that the regularity
of such proceedings was not proved at all; and, for reasons
which will presently appear, the question, whether such
deed was *prima facie* evidence of regularity, is quite imma-
terial to the case as presented upon this record, and will
not, therefore, be considered.

The court, in charging the jury, as requested by the
defendants, "that the plaintiffs could not recover in the
action, because the evidence did not show any right to
recover the possession of any share, interest or portion of
the premises at the commencement of the suit," took the
whole evidence from the jury and assumed to decide the
whole case himself; and the plaintiffs, having introduced
evidence tending to show every fact necessary to enable
them to recover, however strongly the evidence of the
defendants might have tended to show an exclusive posses-
sion of Joseph Campau and an ouster of the plaintiffs and
those under whom they claimed, for a sufficient time to bar
their rights under the statute of limitations, still all these
were questions of fact for the jury, and the court manifestly
erred in excluding these facts from the jury and assuming
to decide the entire case himself, unless the effect of the
tax-deed to Palms (proved by the defendants), and his con-
veyance to the defendant, Daniel J. Campau, was such as
*necessarily* to cut off all the rights of the plaintiffs and
those under whom they claimed.

The court must therefore have been of the opinion,
upon the state of the evidence appearing before him, with-

out any thing to impeach the regularity of the proceedings upon which the tax-deed depended, that such was the effect of one of these deeds or both of them together.

The court seems to have held that the deed executed by Francis Palms (together with the heirs of Joseph Campau) to Daniel J. Campau, did not cut off the interest (whatever it was) of Palms under his tax-deed, and that it did not necessarily convey all the interest of the several heirs of Joseph Campau executing it, to Daniel J. Campau; probably construing it as a conveyance of such interest only as they derived from their ancestor Joseph Campau, and holding that Palms, who was not one of the heirs, had joined in the deed only because his wife, who was one of the heirs, was one of the grantors. Upon no other hypothesis can we account for the refusal to charge, as requested by the plaintiffs, that "the deed of Palms and others conveyed all the interest of the grantors in the land to Daniel J. Campau, and purported to convey the whole of said lot."

This refusal was clearly erroneous. There is no ground for supposing that Palms joined in the deed for the purpose of rendering effectual the conveyance of his wife, as to her interest; as her deed without him would have been equally effectual for this purpose. And it is very clear from the face of the deed, that it was intended to convey, not only the interest which any of the grantors had as the heirs of Joseph Campau, but any other interest which any of them had, however acquired, and that it purported to convey the whole lot. It is true that the deed, immediately succeeding the granting words, and preceding the particular description of the property, uses the language, " all the right, title, and interest of the parties of the first part in and to all the following described real estate and premises, situate, lying and being in the counties of Wayne," etc., [there were lands situate in other counties conveyed by the

same deed] "of which the late Joseph Campau of the city of Detroit, in the state of Michigan, died seized or possessed;" but this last clause in reference to Joseph Campau's dying seized or possessed, would seem to have been here used rather in the sense of identifying the several tracts in the several counties named, than of specifying the particular interest to be conveyed by the grantors. At all events, the subsequent words of the deed, immediately following the specific description of the property, clearly show the intent to convey any and all interest of the several grantors in the lands mentioned, without reference to the particular mode in which the right or title might have been acquired; "together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof; *and all the estate, right, title, interest, claim, or demand whatsoever of the said party of the first part either in law or equity, of, in and to the above bargained premises, with the said* hereditaments and appurtenances." Nothing, therefore, can be clearer than that Palms, by this deed, was cut off and barred from asserting any right, title, or interest under his tax-deed; and that, as between Palms and the grantee, that interest was conveyed to the latter.

It was no longer an outstanding title (if it ever had been such) in a third person (that is in Palms, who was not a defendant).

But the effect of this transfer from Palms to the defendant Daniel J. Campau, as between the latter and the present plaintiff, or whether he could assert it against them with the same effect as it could have been asserted by Palms, is a question which remains to be considered. And in discussing this question, we shall assume without deciding, that the tax-deed to Palms was *prima facie* evi-

dence of the regularity of all the proceedings upon which it was based; and there being no evidence tending to show any irregularity, that the deed might have operated as an effectual bar to the plaintiff's rights, had Palms still held the tax-title, under the deed, and the suit had been brought against him. We cannot assume that the jury, had it been left to them, would necessarily have found all that the testimony tended to show in reference to the possession of Joseph Campau, and though there was testimony tending to show more, the jury might only have found from the evidence that, though Joseph Campau held actual possession of the whole, he did not at any time, or at a sufficiently early period, claim to own the whole, but only his own two-thirds; or (as the possession of one tenant in common is, as a general rule, the possession, and inures to the benefit, of all) the jury might have found that, though in possession of, and claiming title to, the whole, the circumstances were such as not, at any time, or at a sufficiently early time, to create an ouster of the other tenants in common; and that Joseph Campau, though in possession of the whole, was a co-tenant or tenant in common with the latter, at the time the taxes were assessed and became a charge upon the property, and at the time of the sale and the deed to Palms. And, as Daniel J. Campau, to whom the other heirs as well as Palms conveyed, shows no other title (and none is shown by any of the defendants) except that derived from Joseph Campau (unless this tax-title be one), he stands in the same position, with respect to this tax-title, that Joseph Campau would have occupied, had he been living, and the conveyance of the tax-title had been made from Palms to him, and this suit had been brought against him.

Now, upon the hypothesis of such a finding by the jury, what would be the rights of Daniel J. Campau under the

purchase of this tax-title from Palms, as against these plaintiffs? Or, to simplify the hypothesis without changing its legal elements, suppose Joseph Campau were living and this action brought against him, and the finding of the jury as above supposed, could he set up that title against these plaintiffs, his co-tenants, to strengthen his own, or to defeat their recovery in this action? We are satisfied that he could not. The sale seems to have been of the whole lot, and of course for the whole tax. Joseph Campau, therefore, did not pay any of his own share of the tax, and the sale, which is an entire thing, was based in part on his own default. It may be regarded as settled in this state, that one in possession of land, claiming it as his own, is bound to pay the taxes imposed upon it,—certainly such as are imposed and become due during such possession; and that, by neglecting this duty, suffering the land to be sold for the taxes, and bidding it in himself, he can acquire no title as against any one, and certainly not as against a co-tenant; such sale being based upon his own default.—*Lacey v. Davis, 4 Mich., 140.* And that one tenant in common, without reference to the question of possession, cannot procure the title of his co-tenants by purchasing in the land for taxes, a part of which were upon his own share, as such sale is based *in part* upon his own default.—*Page v. Webster, 8 Mich., 263 ; Butler v. Porter, 13 Mich., 292.*

Of course if such co-tenant procure another person to bid in the property for him, and to take the deed, this will give him no greater right.

But it is urged that if the land is bid in by a stranger, on his own account, and without any understanding or collusion with the co-tenant, and a deed be given to the purchaser, such tenant, though the sale have been based in part upon his own default, may purchase in the title and thus acquire the interest of his co-tenant, and set it up

against him. In such a case, it is true, the purchasing tenant, if not in possession, is under no obligation to pay the taxes of his co-tenant. But we need express no opinion upon such a case, as it is not involved here.

In the present case it is clear enough that defendant claimed on the trial, that Joseph Campau was continually in possession, claiming the whole and treating it as his own, from a period long prior to levy of the tax until his death, long after the sale became absolute and the deed was given to Palms. They introduced evidence tending to show this; and this must be treated as an admission, at least by them, that he was thus in possession. If so in possession, claiming the whole as his own, it was his duty to pay *all* the taxes (*Lacey v. Davis, ubi supra*); and justice and good faith to to other owners (or tenants), require that, if one tenant in common is in possession having the use of the whole (and certainly none the less because he claims it as his own), he shall keep down the taxes on the whole during such occupancy; and that he shall not take advantage of his own violation of this duty, to acquire their interest in the land by a sale. Indeed, the law in force at the time this tax was assessed and the sale made, expressly declares that "the person in possession of any real estate at the time any tax is to be collected, shall be liable to pay the tax imposed thereon" (see *City Charter as published in 1855, p. 50, § 5, Act of April 22, 1833*); and if any other person by agreement or otherwise ought to pay it, an action was given to recover it.

It was, therefore, the clear duty of Joseph Campau, upon the hypothesis of the case now under consideration, to pay the whole of the tax for which this sale was made; and the neglect or violation of this duty, in allowing the land to be sold for the taxes, was a wrong both to the other owners in common (who had a right to rely upon his

24 MICH.—47.

performing that duty), and to the public. And though Palms, the purchaser, might assert his title against all the owners, as he violated no duty and was guilty of no wrong; yet Joseph Campau, the party thus in default, when he should subsequently purchase in the title so sold, would be thereby merely correcting the wrong he previously committed; and the payment to the purchaser and conveyance to himself, would operate merely as *a payment* of the tax, and give him no greater rights than if he had paid it when it became due, as it was his duty to have done. To allow him to set it up as a title to defeat that of the other owners, under such circumstances, would be to enable him to take advantage of his own wrong to the injury of others, and to encourage fraud.

The language found in the opinion in *Page v. Webster*, *8 Mich., 264*, in reference to the purchase "from a *bona-fide* purchaser whose title had become absolute, whereby the tenancy had been dissolved," was used in a case where no duty rested on the party buying from such purchaser to pay any more than his own share of the tax. It is besides, properly speaking, no part of the decision of the case, a mere saving clause not claimed to apply to the case before the court, and therefore a mere *dictum*.

But in a case where a party whose duty it is to pay all the taxes on the land, allows it to be sold for such taxes to a stranger who might hold the whole against all parties, though this may terminate the tenancy while such tax-title is held by another, yet it has been terminated by the wrong of the party in default; and when *he* purchases in the title, he and the former owners are remitted to their original position and rights as they stood before the sale, and as they would have stood had the taxes been paid when due, or had the sale for the taxes been made directly to such party in default. Such, we think, must be the result upon

principle. There seems to be but little direct authority upon the precise question, but by analogy, see *2 Bl. Com., 450; Schutt v. Large, 6 Barb., 373.*

We think, therefore, the purchase of the tax-title from Palms by Daniel J. Campau, who stands only in the shoes and in the right of Joseph Campau, operated merely as a payment, and gave him no additional rights to the land, as against these plaintiffs at least.

The court, therefore, erred, not only in taking the case from the jury, but in refusing to charge, as requested by the plaintiffs, " that the deed from Palms to Daniel J. Campau inured to the benefit of the plaintiffs, and if they were not otherwise barred from a recovery, the sale of the lot for the paving taxes, and the conveyance made thereon to said Palms and his conveyance to said Daniel J. Campau, are, of themselves, no bar to a recovery."

We have purposely avoided expressing any opinion whether the tax-deed to Palms was *prima facie* evidence of the regularity of proceedings, as this is not properly involved in the case, and the counsel did not cite or comment upon the particular statutes, etc., upon which the question may depend.

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.