## John Butler v. Executors of George F. Porter.

*Tax sale of undivided interest* — *onus on purchaser to show what it covers.* — In a contest between one holding an undivided interest in land by original title and a purchaser of an undivided interest in the same premises at a tax sale, the burden is upon the latter to show that the interest purchased by him is the same as, or includes, the interest of the former.

Thus, in ejectment by one holding an undivided one-third interest in certain premises, by title derived from the United States, against one claiming title under several tax deeds, one of which conveyed an undivided two-thirds, and the others an undivided one-third interest in the premises; — *Held,* That it was for the defendant to show that said tax deeds covered the one-third interest claimed by the plaintiff.

*Co-tenants* — *Tax titles.* — One who is a tenant in common of property, whether in possession or not, cannot acquire title against his co-tenant by a purchase of the entire premises at a tax sale. — *Page v. Webster,* 8 *Mich.,* 263.

*Heard October* 22, 1864. *Decided May* 13.

Error to Kent Circuit.

Ejectment. The case was tried by the Court, without a jury, and judgment rendered for the plaintiff. Defendant brought error.

The finding by the Court was as follows:

The land in controversy is the undivided third of the west half of the south-east quarter of section seven, in town six, north of range eleven west. From the testimony in this case, I find the facts to be:

AS TO GOVERNMENT TITLE.

1. The United States conveyed to Henry Whiting the west half of the south-east quarter of said section, by patent dated November 4, 1834.

2. Henry Whiting, and Eliza, his wife, conveyed to

John Mullett the undivided third part of the west half of the south-east quarter of said section, by deed dated September 24, 1839.

3. Henry Whiting died in 1851, leaving a widow, Eliza, and two sons, Henry M. and William D., both of age at the time of his death.

4. Eliza Whiting, Henry M. and William D. Whiting conveyed to George F. Porter the undivided third of the west half of the south-east quarter of said section, by deed dated January 19, 1853.

5. John Mullett, and Lucy, his wife, conveyed to John Butler the undivided third of the west half of the south-east quarter of said section, by deed dated April 11th, 1853.

### AS TO TAX TITLES, TAX RECEIPTS, ETC.

1. The Auditor General, by sundry deeds, conveys to Consider Guild the undivided one-third of the west half of the south-east quarter of said section for the delinquent taxes of the years 1843, 1844, 1845 and 1846; and conveys to George H. White and Solomon O. Kingsbury the undivided two-thirds of the west half of the south-east quarter of said section, for the delinquent taxes of the year 1847.

2. Consider Guild, and Phœbe, his wife, convey to John Butler the undivided one-third of the west half of the south-east quarter of said section, by quit claim deed dated December 13, 1852; and George H. White and Solomon O. Kingsbury convey to John Butler the undivided two-thirds of the west half of the south-east quarter of said section, by quit claim deed dated December 14, 1852.

3. The Auditor General conveys to John Butler the undivided one-third of the west half of the south-east quarter of said section, for delinquent tax of 1851, and sold for $4 $\frac{42}{100}$; date of sale, Oct. 3, 1853; date of deed, Nov. 17, 1854.

BUTLER v. PORTER.

4. The Auditor General conveys to John Butler the undivided two-thirds of the west half of the south-east quarter of said section, for delinquent tax of 1852. Amount sold for, $3 $\frac{73}{100}$. Date of sale, Oct. 3d, 1853; date of deed, Nov. 17th, 1854.

5. George F. Porter paid the taxes upon the undivided one-third of the west half of the south-east quarter of said section, for the years 1843, 1844, 1845, 1846 and 1847, to the State Treasurer; and Consider Guild paid the taxes upon the undivided one-third of the west half of the south-east quarter of said section, for the years 1848, 1849, 1850, 1851 and 1852, to the Township Treasurer.

At the commencement of this suit, the defendant was n possession of the entire west half of the south-east quarter of said section — claiming one undivided one-third under his deed from Mullett, and claiming remaining undivided two-thirds under said tax deeds. But the payment by the plaintiff of his taxes for the years 1843–4–5–6 and 7, disposed of the defendant's claims under said tax deeds, except the titles for the years 1851 and 1852.

These will need examination; and first —

### AS TO THE TAX TITLE OF 1851.

The testimony shows that the entire west half of the south-east quarter of said section was assessed as non-resident to W. Whiting, and taxed at the sum of $8 $\frac{36}{100}$. That Guild paid the taxes upon one undivided one-third. That Butler purchased at tax sale one other undivided one-third, and received tax deed as stated. That the remaining undivided one-third was not sold; why, does not appear. The tax upon it may have been paid by Mullett, or by Porter, or by Butler himself. In the absence of any testimony upon this point, it may as well be held that Butler's purchase at the tax sale was

but a payment of the tax upon the undivided one-third he had recently bought of Mullett, as that his tax deed holds the undivided one-third in controversy. But, aside from this, the testimony shows that the undivided one-third which Butler bought was advertised and sold for $4 $\frac{42}{100}$, of which amount 70 cents were for charges and expenses of sale, and 74 cents for interest, leaving $2 $\frac{98}{100}$ as the amount of tax. One-third of the $8$\frac{36}{100}$, the amount of tax upon the whole eighty, is $2$\frac{79}{100}$, being 19 cents less than the amount sold for, (exclusive of interest and charges.) The law only authorizes a sale for the amount of the tax and the interest and charges, and this sale being for an amount, 19 cents, in excess of the sum legally chargeable upon the land, must be adjudged void.

### AS TO THE TAX TITLE OF 1852.

The testimony shows that the entire west half of the south-east quarter of said section was assessed as non-resident to W. Whiting, at the sum of $4 $\frac{12}{100}$; that Guild paid the tax upon one undivided one-third, and that Butler purchased at tax sale, October 3, 1853, the remaining undivided two-thirds, and received tax deed as stated.

At the time of such purchase, Butler claimed, as before stated by his deed from Guild and wife, tax titles to one undivided one-third of said eighty for the years 1843-4-5 and 6; said deed of date December 13, 1852. By his deed from White and Kingsbury, tax titles to the undivided two-thirds of said eighty for the year 1847. See deed of date December 14, 1852, and by his deed from Mullett and wife the Government title to one undivided one-third of said eighty; see deed of date April 11, 1853.

And the case further shows that Butler, in his written statement to his Supervisor for the year 1853, and of date April 12, gave in the undivided two-thirds of the

west half of the south-east quarter of said section; tax title; and that he subsequently paid the taxes on the entire eighty for the year 1853, to the Township Treasurer.

In view of the facts as shown, this deed by the Auditor General to Butler, conveying the undivided two-thirds of the west half of the south-east quarter of said section, on account of sale for delinquent taxes of the year 1852, is adjudged void, on the ground that a tenant in common of lands can acquire no title to the interest of his co-tenant by bidding on the land at a sale for delinquent taxes.

*John T. Holmes* and *Geo. V. N. Lothrop*, for plaintiff in error:

1. For the years 1843 to 1847 the plaintiff in error had tax deeds. But it appeared, as found by the Court, that George F. Porter, had paid the taxes for those years. He was not the owner of the land. So far as appears, he paid as a mere volunteer. It is, therefore, submitted that such payment could not be claimed as a defence to the tax title.

2. The tax title for tax of 1852 was held invalid, on the ground that a tenant in common cannot in this way acquire the interest of his co-tenants.

It is confidently submitted that this is erroneous.

It is conceded that one in possession of land, enjoying its fruits, cannot acquire a valid tax title for taxes falling due while he was in possession, *because it was his duty* to pay such taxes. — *Tweed v. Metcalf*, 4 *Mich.*, 578; *Page v. Webster*, 8 *Mich.*, 263.

But Butler did not become a co-tenant till April, 1853.

The tax of 1852 became a lien on the land in November, 1852, and had been returned to the Auditor General's office as a delinquent tax, before he became

such co-tenant. Nor was he in possession of the land when it was sold for this delinquent tax, in October, 1853. The case shows that he was only found to be in possession at the commencement of the suit, when he had entered under all his titles.

Now, a co-tenant, unless in exclusive possession, is not bound to pay his co-tenant's taxes.

The only unity of right is right of possession. The title interests of the parties are perfectly distinct. Each may sell, mortgage or demise his undivided interest wholly irrespective of the other. They must even sue separately for all matters respecting the land, except for injuries to the possession. These rules are elementary.—1 *Washburne on Real Prop.*, 416.

As to the rights of title, they stand as strangers to each other. A co-tenant, as such merely, is no more bound to pay the other's taxes than he is his neighbor's. He may as well buy that co-tenant's title at a tax sale as at a sheriff's sale, or by a private bargain.

*T. M. Cooley* and *Ball & McKee*, for defendant in error:

1. *The Titles of* 1843–4–5–6 *and* 7.—Plaintiff proves that he paid the taxes on one undivided one-third to the State Treasurer for each of these years. As he paid these in his own name, it is a fair presumption that he paid them in his own right, although his title does not appear to have been perfected by deed until 1853. Certainly there can be no presumption that it was this interest, rather than either of the others, that was sold for that year. The tax deed may be *prima facie* evidence of a valid sale, but it cannot possibly identify the interest sold, when the description is equally applicable to two others. And in defending against a tax title, there is no burden of proof resting upon the adverse claimant, except what the statute expressly imposes.

13 MICH.— T.

2. *The Title for* 1851. — For this year, it appears that the whole land was assessed as non-resident to William Whiting; that Guild paid the taxes upon one undivided one-third, and that another undivided one-third was sold to defendant. The other was not sold; why, does not appear. As the Circuit Judge says in his finding, it may have been paid by Mullett, or by plaintiff. We have no means of determining from this record whose one-third of the land was sold, and I am aware of no principle which will allow of a presumption that it was plaintiff's interest rather than defendant's. There is some ground for presuming the contrary; and that defendant's purchase was made to protect his land against the lien which existed upon it when he bought of Mullett.

Moreover, it appears from the testimony that this sale was made for 19 cents more than was legally chargeable. The sale is therefore void. — *Kemper v. McClelland*, 19 *O.*, 324; *Joyner v. School District*, 3 *Cush.*, 567; *Doe v. McQuilkin*, 8 *Blackf.*, 335, 581; *Huse v. Merriam*, 2 *Greenl.*, 375; *Colman v. Anderson*, 10 *Mass.*, 115; *Elwell v. Shaw*, 1 *Greenl.*, 339; *Torrey v. Millbury*, 21 *Pick.*, 70; *Bangs v. Snow*, 1 *Mass.*, 188; *Drew v. Davis*, 10 *Vt.*, 506; *Thurston v. Little*, 8 *Mass.*, 429; *Dillingham v. Snow*, 5 *Mass.*, 547; *Stetson v. Kempton*, 13 *Mass.*, 283; *Libby v. Burnham*, 15 *Mass.*, 144; *Hayden v. Foster*, 13 *Pick.*, 492; *Alvord v. Collin*, 20 *Pick.*, 418.

3. *The Title for* 1852. — The sale for the taxes of 1852 was made October 3, 1853. Defendant, under his conveyances from Mullett, had been the unquestioned owner of one undivided third from the preceding April. He could not, therefore, become the purchaser of the interest of his co-tenant. — *Page v. Webster*, 8 *Mich.*, 263.

But defendant's title dates back of the Mullett deed. Guild had become the owner of one undivided third by his tax deeds, and this he conveyed to defendant, December 13, 1852, before the tax of 1852 had been returned.

White and Kingsbury conveyed to him the next day. Either defendant, therefore, or those through whom he claims, were joint tenants with plaintiff and his grantors when this tax accrued, when it was returned, and when the sale was made.

It is, perhaps, questionable whether the Auditor General was correct in making sale for the taxes of 1852 in October, 1853. Before the tax law of 1853, a sale for taxes could not be made until one year from the October succeeding their return. The law of 1853 altered this by directing the sale to be made the October following the return. The effect of this was to allow one year less time for payment of the taxes; and if this provision is to be applied to the tax of 1852, which had already been returned to the office of the County Treasurer, an effect is given to the law which is, in some respects, retrospective. I do not dispute that the Legislature has *power* to do this; but a statute is not to be construed so as to give it a retrospective effect, unless the terms employed plainly require it. — *Dash v. Van Kleeck*, 7 *Johns.*, 477; *Johnson v. Burrell*, 2 *Hill*, 238; *Bailey v. Mayor, etc.*, 7 *Hill*, 146; *People v. Carnal*, 2 *Seld.*, 463; *Lawrence v. Miller*, 2 *Comst.*, 245; *Boyd v. Barrenger*, 23 *Miss.*, 270; *Garrett v. Beaumont*, 24 *Miss.*, 377; *Murray v. Gibson*, 15 *How.*, 421; *Plumb v. Sawyer*, 21 *Conn.*, 351; *Moon v. Durden*, 2 *Exch.*, 22.

In view of these authorities, I submit whether the provisions of the law of 1853 directing a sale in the October succeeding the return of the tax, should not be construed as applying only to *the taxes assessed under that law.* — See *Comp. L.*, § 859. If so, the Auditor General was a year too soon in making the sale for the taxes of 1852.

MARTIN Ch. J.:

We find no error in the rulings and finding of the Circuit Judge. The plaintiff and defendant are tenants in common of the land. The title under which the plaintiff in error sought to maintain this action was. acquired through tax sales. The facts of the case, as exhibited by the bill of exceptions, do not show that although an undivided interest in the land was sold for a series of years, yet that the one-third interest of the defendant was ever sold, or that he was ever in default of payments of the amount for which he was liable, up. to the year 1852. I think the inference is in his favor, as the taxes for one-third had been regularly paid up to the year 1852. How, then, as the counsel for the defendant in error suggests, can we identify the particular interest sold for delinquent taxes for prior years, to the prejudice of either party? The finding of the Circuit Judge clearly and sufficiently illustrates these facts.

As to the taxes of 1852 — Porter and Butler then being tenants in common, neither, by the payment of taxes nor purchasing in at a tax sale a common title, could divest the other of his property. He could only acquire a right of action for the aliquot proportion of the money paid upon the interest of the co-tenant. — See *Page v. Webster*, 8 *Mich.*, 263.

Judgment is affirmed, with costs.

CHRISTIANCY J.:

The payment by Porter of the taxes of 1843, 1844, 1845, 1846 and 1847, on the undivided third of the land, though made by him before he acquired his title, and though it does not affirmatively appear upon whose interest it was paid, was a good payment on one undivided third of the land, and only the balance could be sold for the taxes of those years; and as Porter

showed. a good title, derived from the United States, which vested in him January 19th, 1853, it was incumbent on the defendant, Butler, if he would defeat the plaintiff's title by the tax deeds for those years for the other one-third or two-thirds, to identify the interest he had acquired by those deeds, and to show that the undivided interest claimed by him under those deeds included the third owned by the plaintiff. Until this should be done, it must remain entirely uncertain what or whose particular undivided interest the defendant had acquired by his tax deeds. This the defendant. failed to do, and, therefore, failed to establish any title in himself for those years.

As to the taxes of 1851, it appears by the finding that the entire lot was assessed to one Whiting as non-resident; that the taxes were paid on one undivided third by Guild, (from whom defendant had, in December, 1852, purchased his tax title of one-third for the years 1843, 1844, 1845 and 1846); that defendant, Butler, purchased one-third for the taxes of this year, at the tax sale made October 3d, 1853, at which time he was the owner of one-third, by title derived from the United States, and which became vested in him April 11th, 1853, and that the remaining one-third was not sold for the taxes of 1851 — for what reason does not appear, though the natural inference would be that it must have been paid. We entirely agree with the Circuit Judge, that the tax on the one-third not sold may have been paid either by defendant, Butler, or by Porter, (who had owned one-third from January, 1853). In the absence of all testimony, we cannot say by which it had been paid, or was most likely to have been paid. But before Butler could defeat Porter's title by the deed for the unpaid taxes of the year, it was incumbent on him to show that the third delinquent for taxes, and sold for such delinquency, was not his own, or, in other words,

that it was Porter's third. This he could easily have done, if true, by showing that his own third had been paid. Until he should do this, he left it quite as probable, upon the evidence, that the third sold was his own as that it was Porter's.

As to the taxes of 1852, it appears by the finding that the entire lot was assessed as non-resident to one Whiting; that Guild paid the tax on one-third, (he having held the tax titles, as above stated, subsequently conveyed to Butler,) and that the remaining two-thirds were purchased by Butler at the tax sale of October, 1853, for which he received his deed in November, 1854. At the time of this purchase by Butler of the two-thirds, he claimed and owned one undivided third of the land, by title derived from the United States, and also claimed title to one-third by deeds for taxes of 1843 to 1846 inclusive, by purchase from Guild, and to two-thirds by deed for taxes of 1847. But, to say nothing of the tax titles, he had a good title to one undivided third of the lot; and the tax on one-third having been paid by Guild, it is evident his tax purchase of the two-thirds for the taxes of this year 1852 must have included his own one-third, for the non-payment of the tax upon which, he was himself in default to the State. This brings this sale precisely within the letter and spirit of the rule laid down by this Court in *Page v. Webster*, 8 *Mich.*, 263. As owner of the one-third, it was his duty to have paid his portion of the tax before sale. It is insisted by the counsel for plaintiff in error, (defendant below,) that this duty is only imposed by possession. This is not the ground of the decision in *Page v. Webster*. The duty springs from the ownership. The sale is an entire thing based upon the delinquency in the payment of the taxes for which the sale is made, and the purchaser cannot be allowed to acquire the title of others in the property by a sale based, in part, upon his own default. We are

entirely satisfied with the principle of that decision, and see no, reason for departing from it.

The judgment must be affirmed, with costs.

CAMPBELL J. concurred.

COOLEY J. did not sit in this case, having been of counsel.