# Wheeling.

## Morris *vs.* Joseph.

### January Term, 1866.

1. A trustee *de son tort*, is he who of his own authority enters into the possession or assumes the management of property which belongs to another ; and he is subject to the same rules and remedies as other constructive trustees.

2. M. assumed the control and management of the personal property and real estate of L. He leased the land for the year beginning April 1st, 1844, and ending April 1st, 1845, and received the rent therefor : the land was returned delinquent for the non-payment of taxes for the year 1844, and sold in October, 1845, when M. became the purchaser. HELD :

     1. That having undertaken the management of the land, he was bound to act with reasonable diligence in the execution of his trust, and should not have neglected so essential a matter as the preservation of the right to the land by his *cestui que trust ;* and it would be inequitable to permit him to become the owner of the land on a delinquency which occurred in the year which he was leasing the land and receiving the rent.

     2. Although the fiduciary relation may have ceased at the time of the delinquent sale ; yet that sale having been occasioned by his wrong he should not be allowed to profit by it.

*George McCulloch* obtained a decree in the circuit court of *Tyler* county, at the fall term, 1844, against *George Lefever,* for 140 dollars and 50 cents, and the court ordered the sale of a tract of land, lying on *Middle Island Creek,* containing 100 acres, in discharge of the decree. At the sale *McCulloch* became the purchaser, and at the spring term, 1845, it was confirmed and the commissioner ordered to convey the land, which he did by deed dated June 2nd, 1845. *McCulloch* on the 14th day of November, 1848, sold and conveyed the land to *Waitman F. Joseph.*

In June, 1853, *James Morris* instituted an action of ejectment in the circuit court of *Tyler,* against *Joseph* to recover the said tract of 100 acres of land, and at the September term, 1856, the defendant, *Joseph,* withdrew his plea of not

guilty, reserving equity, and judgment was had against him. He therefore filed a bill in the same court, alleging that, he had ·purchased of *McCulloch*, who purchased under the decree as before stated. That in 1844, the tract of 100 acres was on the land books of *Tyler*, in the name of *Lefever;* that *James Morris* was the agent of *Lefever*, and during the year beginning April 1st, 1844, and ending April 1st, 1845, had leased the land to one *Varner* for the sum of 15 dollars, and had collected the rent, and that at any time during the year there was sufficient property on the premises to pay the taxes thereon due the State. That the land was returned delinquent for that year for the non-payment of taxes, and was sold by the sheriff for such taxes on the 13th day of October, 1845, and bought by *Morris* for the sum of 55 cents, the amount thereof and the damages, and that a deed had been made to him in conformity to law, by the clerk of *Tyler* county court. That he never knew of the non-payment of taxes for the year 1844–45 until he learned that *Morris* was setting up a claim to the land. That from the period of his purchasing the land from *McCulloch*, to the institution of the action of ejectment, he had greatly improved the land by fencing it and making other repairs, thereby greatly increasing its value, and that *Morris* had frequently passed the premises and observed the process of repairs. He also alleged fraud on the part of *Morris* in permitting the land over which he was the agent and of which he had the management, to be sold for non-payment of taxes, when he received the rent arising therefrom and which was amply sufficient to pay said taxes, and himself becoming the purchaser by virtue of his own wrong and bad faith to his principal, *Lefever*. He asked that *Morris* might be enjoined from executing his writ of possession under the judgment in ejectment. The injunction was granted. *Morris* answered that *Lefever* left the country in 1843, and had not since been heard from; that he left a wife (who was a niece of *Morris*) and children in helpless and indigent circumstances, and that with the approbation of the wife he rented the land in controversy to *Varner* as alleged in the

bill, and applied the proceeds to her support; that there was sufficient property on the premises in the year 1844 to pay the taxes assessed thereon, and that *Lefever's* wife left the county before October, 1845, and that he did not retain the rent received from *Varner* after it was paid him; that the use of the land would be adequate compensation for all improvements placed on it by *Joseph;* that he had no knowledge of the land having been returned delinquent until the day it was sold, and he disclaimed all the allegations of fraud and dishonesty of the bill, and claimed that *Joseph* had notice of his title when he purchased in 1848 of *McCulloch,* by reason of his title being of record in the proper office.

The deposition of *Ashberry Varner*, filed by the complainant, proved that he occupied the land as alleged in the bill; that he rented of *Morris* who told him that he *had authority to rent it;* that he *subsequently* told him he rented it for the use of *Lefever's* wife; that there was property on the land in 1844 out of which the taxes could have been made, and that he paid the rent to *Morris*, a part before, and the residue after the term expired. The testimony of *Hiram M. Doak* proved that in 1843 or 1844, *Morris* wanted him to go to *Wheeling*, where *Lefever* was confined in jail, as a witness for him, and that *Morris* proffered him money for the purpose of bearing his expenses, saying that he had all of *Lefever's* business to attend to. *William Ankron's* deposition proved that he knew of *Morris* attending to *Lefever's* business; that he advertised his property for sale and appended his own signature thereto, and controlled and managed it, and that he attended to *Lefever's* business whilst he was said to be in jail at *Wheeling*, and from time to time until his family moved away.

The circuit court perpetuated the injunction at the April term, 1859, and *Morris* appealed to this court.

*G. H. Lee*, for the appellant.

*J. M. Stephenson*, for the appellee.

HARRISON, THOMAS W., J., delivered the opinion of the court.

The only question fairly arising in this case, is that of fraud on the part of the appellant. The appellee filed his bill of injunction in the circuit court of Tyler county. The facts in the case are in substance, that Morris, the appellant, in the year 1844 acted as the general agent of one Lefever, (who left the country in 1843, and had not since been heard of) under whose title the appellee claimed: that in the same year the appellant rented to Varner the tract of 100 acres of land in controversy in this cause and received the rent; that the land was returned delinquent for non-payment of taxes thereon for the year 1845, amounting to 50 cents, and was sold in October, 1845, for that delinquency and purchased by the appellant for his own use and benefit; that he obtained a deed from the clerk and brought ejectment to recover of appellee the land; that judgment was rendered by default; that the land in controversy was sold in the year 1844 or 1845, under a decree of the circuit court of Tyler county, for the debts of Lefever, and the appellee held it as derivative purchaser under that sale. The appellee alleged in his bill, that the action of the appellant in the premises was fraudulent as to him, and therefore the purchase should be held to be for the benefit of Lefever and his alienees, and prayed an injunction to the judgment, which was granted and by subsequent decree, perpetuated.

A trustee *de son tort* is he, who of his own authority enters into the possession, or assumes the management of property which belongs beneficially to another: Hill on Trustees, 246, and notes; and he is subject to the same rules and remedies as other constructive trustees; Ibid, 247.

The appellant in his answer states that he assumed the management of the property in controversy, being the relative of Lefever's wife. He told the witness, Varner, that he had authority to rent it. He received the rent and disposed of it; he managed, controlled and disposed of other property of Lefever. He said to the witness Doak, that he had all of Lefever's business to adjust. The testimony of

Doak and Ankron proves that he attended to Lefever's business generally.

We are of opinion that the appellant was the trustee and agent of Lefever. Having undertaken the management of Lefever's property, we think he should not have neglected a matter so essential to the interests of his *cestui que trust* and principal, as the preservation of his right to the land by payment of taxes on it. He should have acted in relation to it with reasonable diligence. 2 Story's Equity Juris § 1275.

Whether he would be liable in damages for this neglect or not, surely it would be inequitable to permit him to become the absolute owner of a tract of 100 acres of land for the sum of 55 cents, on a delinquency which occurred in the very year in which he was renting it and receiving the rents. Although the fiduciary relation may have ceased at the time of the delinquent sale, yet that sale was occasioned by his wrong, and he at least should not be allowed to profit by it. 1 Story's Eq. Juris, § 321–22.

We think the decree of the court below is right, and the same is affirmed.

DECREE AFFIRMED with damages.