# CHARLESTON.

BATTIN v. WOODS et al.

Submitted June 17, 1885.—Decided November 21, 1885.

27 58
29 609
29 655
30 178
30 352
31 6

27 58
39 601

27 58
44 682
44 685
45 401
45 431

27 58
48 461

27 58
54 662
54 664

27 58
58 338
58 351

27 58
63 495

1. A suit brought to set aside a tax-deed, because the lands were redeemed, and because the party, to whom the deed was made, sustained such relation to the land, that he could not acquire a tax-title thereto, and it does not appear that any adverse possession is claimed, is not barred by the statute of limitations. (p. 63.)

2. If one of several tenants in common purchases the land held in common at a tax-sale or from a stranger, who bought it at such tax-sale, such title so acquired will enure to the benefit of all the tenants in common. (p. 66.)

3. Where a number of persons purchase a tract of land, and the title is conveyed to two of them, who execute a declaration of trust that they hold in trust for themselves and the other purchasers, and two others of such purchasers buy a tax-title to the whole, this will be regarded as a redemption of the land and will enure to the benefit of all the cestuis que trust. (p. 70.)

4. Where lands have been sold for the non-payment of taxes and purchased by individuals, and the recorder or the clerk of the county court of the proper county has included the same in the list of redemptions required by sec. 16 of ch. 31 of the Code to be made by him, such list is primary evidence of the redemption of the lands specified therein ; and a copy thereof attested by the clerk of the county court, in whose office the same is, may be admitted in evidence in lieu of the original.—Johnson, President, dissenting. (p. 74.)

John A. Hutchinson for appellant.

Thomas E. Davis for appellee.

JOHNSON, PRESIDENT :

In April 1882 the plaintiff filed his bill in the circuit court of Ritchie, in which he alleged that in 1864 during the great oil excitement of West Virginia a number of parties bought from one Christopher Hobden a tract of 1,250 acres of land for the sum of $50,000 ; that the conveyance was made to the

plaintiff and Henry Holdridge now deceased; that afterwards the said grantees, to whom the land had been granted in fee, carrying out the true intention of the purchasers made their certain declaration of trust in due and proper form, showing that they held the said land in trust for themselves and the other purchasers, in proportion to amount of purchase-money paid by each; that among said purchasers were the defendant, William A. Righter, who had paid one tenth of said purchase-money and was entitled to one tenth of said land, and also the defendant, William H. Fogg, who had paid one fifth of said purchase-money and was entitled to one fifth of said land; that according to instructions the said trustees conveyed 416 67-100 acres of said land to the Haselton Petroleum Company; that the taxes on the land for the year 1865 were properly assessed against Hobden, the trustee having failed to have the deed recorded and transfer made before said taxes were assessed; that the trustees neglected to look after said land and pay the taxes, and the land was returned delinquent for the taxes of 1865, and on September 10, 1867, it was sold for taxes and purchased by J. P. Harris and M. M. Hitchcock, for $13.51; that in in 1868 the said Righter, who was a non-resident, went to West Virginia and instead of redeeming said tract of land, took from said purchasers an assignment of the sheriff's receipt to said purchaser; that within the time for redemption of said land plaintiffs and trustee Holdridge sent an agent J. W. Howe to West Virginia to look after said land and pay the taxes; when he arrived he was informed of the sale for taxes, and that the purchasers had assigned their interest to Righter; that Righter not being a resident of the county in which the land was sold, said Howe paid to the recorder $18.44, the amount necessary to redeem the land as appears by the records of said county of Ritchie, a copy of which record exhibited with the bill marked "CC" is as follows:

"EXHIBIT CC.

"List of Real Estate within the County of Ritchie, sold in the month of September, 1867, for the non-payment of taxes thereon for the years 1865 and 1866:

| 1867. Name of person charged with taxes. | Quantity of land charged. | Estate held therein. | In what township land situated. | Local description of land charged. | Am't. of taxes due thereon for State and school purposes, including interest, damages and commissions. | For the year. | Amount of County tax due thereon, including the same. | For the year. | Amount of township tax due thereon, including same. | For the year. | Quantity of land sold. | Name of purchaser. | Amount of purchase money. | When sold. | When redeemed. | Amount of redemption money. | Remarks. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hebden, Christopher. | 1250 | | | N. F. Hughes' river. | $11 07. | | | | | | 1250 | John P. Harris, M. M. Hitchcock. | $13 51 | Sept. 10, 1867. | July 20, 1869. | $18 44 | J. W. Howe for Holdridge and Battin. |

"STATE OF WEST VIRGINIA, SS.;

"I, G. W. Amos, clerk of the County Court of Ritchie county in the State aforesaid, certify that the foregoing is a true copy from the records on file in my office. (Record of delinquent land tax, page 9.)

"Teste. G. W. AMOS, *Clerk.*"

The bill further alleges, that in the year 1870 J. M. Woods, then recorder of the county of Ritchie, made a deed for said land, notwithstanding said redemption, to Horatio N. Twombley, as assignee of ·William A. Righter; that Twombley had knowledge from the records that the land had been redeemed within the time prescribed by the law, and the assignment made by Righter to Twombley was after the redemption of the land. The bill charges the said tax-deed is fraudulent and void; that it was made without authority of law. It also charges, that Twombley has conveyed 416 67-100 acres of said land to Righter and exhibits the tax-deed; and that he has conveyed the residue of the tract to Wm. H. Fogg and charges that said Righter and Fogg being *cestuis que trust* in said trust declared by the plaintiff and his co-trustee Holdridge, they should under the circumstances and in a court of equity will be held as trustees for themselves and the other parties named in said declaration of trust and those to whom the trustees may have sold any of the land. The bill charges that said deed is a cloud on plaintiff's legal title to said land, and prays, that said tax-deed may be declared void and of no effect, and that the deeds made by Twombley to Righter and to Fogg may respectively be declared void, and for general relief. The bill does not allege that the plaintiff ever had actual possession of said land.

William A. Righter and William H. Fogg answered the bill and admit most of the allegations and charges in the bill; but they deny that the land was redeemed; aver that the trustees did not within the time prescribed by law file in the proper office any certificates or writing, receipts or vouchers showing a redemption of said land, "and that the fact is that the said Horatio N. Twombley was a purchaser of said certificate of sale, and the *bona fide* assignee thereof for a valuable consideration and without notice of any such supposed redemption, and is wholly unaffected by such attempted redemption of said land by said Battin and Holdridge." The answer also avers that the plaintiff finding that the attempt to redeem was not in compliance with the law, voluntarily demanded and received said money so deposited with the recorder; and that the said recorder on January 22, 1870,

repaid and refunded said money to the agent and attorney of said Battin and Holdridge and thereby cancelled and annulled their attempted act of redemption, "as will fully appear by reference to the original papers on file in the clerk's office of the county court of Ritchie county." They deny that the tax-deed is null and void, deny they obtained the assignment after the alleged redemption, and aver that the deed was not made, until after the redemption money had been withdrawn. They deny that they hold said lands for any parties other than themselves, aver that they purchased their interest in said land for a valuable consideration without any notice of any right or title in the plaintiff; that they had no part in causing the land to be returned delinquent; that they have not occupied any fiduciary relation toward the plaintiff or other parties interested in said land, and are not bound to convey to plaintiff said land. "They plead in bar of the plaintiff's suit in this behalf, that more than five years have elapsed, since the said deed was made by the recorder aforesaid to the said Horatio N. Twombley for the said tract of 1,250 acres of land, and that if the plaintiff, as trustee or otherwise, ever at any time had any cause of action or suit against these respondents or the said Twombley in relation to the said land or the title thereto, it arose more than five years before the institution of this suit," &c.

They further aver that before he could be entertained in a court of equity for such relief as he seeks, the plaintiff is required to tender and pay into court all the taxes, expenses, interest and charges due and heretofore paid on said land, which he failed and neglected to pay, and which have in good faith been paid by said Twombley and the respondents, &c.

Stephen D. Law and the Haselton Petroleum Company also separately answered the bill. The deposition of the plaintiff, Joseph Battin, was taken, in which he sustains the material allegations of the bill. The only other deposition taken was that of S. D. Law, the secretary of the Haselton Petroleum Company, in which he does not contradict the allegations of the bill.

On November 14, 1882, the cause was heard upon the bill and exhibits, the answers of Law and of the Haselton Petroleum Company, and the answer of Righter and Fogg, with general

replications thereto, and on the depositions filed ; and the court cancelled the several deeds from the recorder to Twombley and also the deed from said Twombley to Righter for a portion of said land, and also the deed from said Twombly to Fogg for the residue of said tract of land.

From this decree William A. Righter appealed.

Righter here insists, that said decree is erroneous, because said suit is barred by the statute of limitations. The only statute of limitations of five years to a suit to set aside a tax-deed is sec. 27 of ch. 31 of the Code. That section provides : " If the owner of any real estate sold for the non-payment of taxes thereon, his heirs or assigns, claim that the taxes on account of which the sale was made, *were not in arrears*, he may within five years after the deed shall have been obtained and admitted to record, institute a suit in equity * * * to have said sale and deed declared void," &c. This is not a suit of that character. It is not pretended that the taxes, for the non-payment of which the land was sold *were not in arrears*. On the contrary it is admitted in the bill that they were unpaid. Then is there any statute of limitations barring a suit like this? In *Bradley* v. *Ewart*, 18 W. Va. 598, it was held, that sec. 27 of ch. 31 of the Code did not apply to a case like that, where the land was improperly on the assessor's books and sold in an improper name, and that in such a case at any time the sale and deed may be declared void.

Here it is alleged in the bill, that the land was redeemed and also that the defendants Righter and Fogg being interested in the land could not acquire a title under a tax-sale, but such title so acquired would be regarded as a redemption of the land for all the parties interested therein. There is here no claim of adverse possession, for the record does not disclose that there were any of the parties in the actual possession of the land. The suit is not barred by limitation.

It is further insisted that the record does not show that the land was redeemed ; that such redemption is not proved in the record. The bill charges that the land within the time prescribed by the statute was redeemed and vouches, not the receipt of the recorder for the redemption-money, but merely the list with the certificate thereto, as appears in the statement of

the case. The answer most emphatically denies, that the land was redeemed. The appellant by his counsel claims, that, where the law requires a certain document or record to be kept by a public officer as a memorial of a fact, such document or record is the best evidence of such fact; and such fact can be primarily proved only by such document or record, and cites 1 Wharton Ev., secs. 60, 63, 65; 1 Greenl. Ev., secs. 82 to 86; *Peterson* v. *Taylor*, 15 Ga. 483; *Phares* v. *State*, 3 W. Va. 567. These authorities clearly sustain the proposition claimed, and it is settled law. Mr. Wharton, in sec. 60 *supra* gives the reason of the rule as follows: "The policy of the law, independent of other reasons, requires that its original, if practicable, should be produced. For, (1) *lex scripta manet*, while memory as to words is treacherous; and even though not memory but a written copy be offered, such copy has between it and the original the possibility of mistake or of falsification. Then (2) if a party be permitted to hold back the original, when he could produce it, and substitute for it a secondary proof, a door would be open to fraud. And (3) unless such a rule be inexorably applied an end would be put to that accurate and thorough presentation of facts, which is essential to the administration of justice. If no evidence is to be rejected, because it is secondary, a single witness would be enabled to swear, either primarily or secondarily, either by first hand or second hand impressions, to a whole case, documentary and oral; the testimony of a witness in such case would be a mere conclusion of law, derived from his own notions of facts, with this peculiarity, that the law would be made by himself for the occasion; and the functions of both judge and jury would be dispensed with."

In 1 Greenl. Ev., sec. 84, it is said: "The question whether evidence is primary or secondary has reference to the nature of the case in the abstract, and not to the peculiar circumstances, under which the party in the particular cause on trial may be placed. It is a distinction of law and not of fact; referring only to the quality, and not to the strength of the proof. Evidence which carries on its face no indication that better remains behind it is not secondary, but primary. And though all information must be traced to its source, if possible, yet if there are several distinct sources of informa-

tion of the same fact, it is not ordinarily necessary to show
that they have all been exhausted before secondary evidence
can be resorted to."

Is the evidence relied on by the appellee primary or sec-
ondary?  Sec. 15 of ch. 31 of the Code provides, that the
owner of any real estate so sold may redeem, &c., by paying
the amount specified in the sheriff's receipt and such addi-
tional taxes, as may have been paid by the purchaser with in-
terest on the purchase-money and taxes at the rate of twelve
*per cent. per annum.*   The money under this section is to
be paid "to the purchaser, his heirs, or assigns."   Sec. 16 pro-
vides that: "What is authorized to be paid by the preceding
section may be paid by such person as is mentioned therein,
within the said one year, to the recorder of the county, in
any case in which the purchaser, his heirs or assigns, may
refuse to receive the same, or may not reside, or can not be
found in the county. *And a receipt therefor, showing where
and by whom the payment was made, and the amount paid, shall
be signed by the recorder, and a duplicate filed thereof by him in
his office.*"   Again in same section : " One of said duplicate
receipts or writings shall be filed with the recorder of the
county in which said real estate was sold, on or before the
day on which the right to redeem the same will expire, under
the provisions of the said sec. 15 ; and the recorder shall en-
dorse on both said duplicates, the fact and time of such filing.
If the same be not so filed, such redemption shall be void, as to
creditors and subsequent assignees of the benefit of the pur-
chase of said real estate, from the purchaser thereof, his heirs,
or assigns, for a valuable consideration without notice, at any
time before the same is so filed.   *   *   The recorder of
every county shall, in the month of June in each year in
which real estate is required to be sold for the non-payment
of taxes thereon, make a list of all real estate redeemed as
aforesaid, not before included in a similar list."

It is clear that the *list* referred to in the last part of the
section is by the recorder made up from the *duplicate receipts*
required to be filed, and are therefore not the best evidence
of the redemption of the land.  In making up such lists
there is certainly the possibility of mistakes, because the re-
corder makes them up from receipts, which he has given.

Such evidence therefore "carries on its face indications that better remain behind." It is therefore secondary evidence and is not admissible without showing the loss of the better evidence, or that for some reason it can not be produced. The deed from the recorder is *prima facie* evidence of all the material facts cited therein, and is valid and operative unless the *prima facie* evidence is rebutted. *Duquasie* v. *Harris*, 16 W. Va. 354.

One of the material things stated in the deed is, that the land had not been redeemed within the time prescribed by law. This is not rebutted by showing the list above referred to merely. If the *receipt* for the redemption-money had been produced, that would have been sufficient; or if its execution had been proved, and its loss accounted for then secondary evidence might have been produced which would have been sufficient to rebut the *prima facie* evidence of the deed itself. In my opinion, it is not legally shown that the land was redeemed. But as to the conclusion that the *list* was secondary evidence my associates do not agree with me, but think it is primary evidence and shows that the land was redeemed.

But it is insisted by appellee's counsel, that the defendants under the circumstances of this cause could not acquire a tax-title to the land, they being in equity interested therein as part owners, the plaintiff and his co-trustee merely holding the legal title in trust for themselves and the others including the defendants, who were as purchasers entitled to an interest in the land. This Court in *Williamson* v. *Russell*, 18 W. Va. 623–4, approved what Judge Cooley says in his work on Taxation 315, as follows : "Some persons from their relation to the cause or to the tax are precluded from being purchasers at a tax-sale by the sheriff. The title to be transferred at such sale is one based on the default of the person who owes the government the duty to pay the tax. But one person may owe this duty to the government and another may owe it to the owner of the land. Such a case may exist where the land is occupied by a tenant, who by the lease has obligated himself to pay taxes. Where that is the relation of the parties to the land, it would cause a shock to the moral sense, if the law were to permit the tenant to neglect his

duty and cut off the lessor's title by buying in the land at a tax-sale. * * There is a general principle applicable to such cases; that a purchase made by one, whose duty it was to pay the taxes, shall operate as a payment only; he shall acquire no rights as against a third party by neglect of duty, which he owed to such party. This principle is universal and is so entirely reasonable as scarcely to need the support of authorities to show the existence of the duty and the disqualification is made out in every instance." In carrying out this just rule it has been held, that owners of land must pay the tax. *Kelsey* v. *Abbott*, 13 Cal. 609.

If a person is in possession of land claiming it as his own, it is his duty to pay the tax, although he has no paper-title and is a trespasser; and under such circumstances he can not acquire an outstanding title by neglecting to pay the taxes and allowing the land to be sold for the same and purchasing it himself. *Barrett* v. *Amerein*, 36 Cal. 322.

One, whose duty it was to pay the taxes on land, can not gain an advantage in respect to the title, by allowing the land to be sold for taxes and buying it in himself or buying it from a stranger, who bought it at the sale. *Coppinger* v. *Rice*, 33 Cal. 408; *Mays* v. *Shear*, 25 Cal. 45; *Garwood* v. *Hastings*, 38 Cal. 217.

If one of several tenants in common purchase the land held in common at a tax-sale or from a stranger, who bought it at such tax-sale, such title so acquired will enure to the benefit of all the tenants in common. *Floyd* v. *Lynch*, 28 Pa. St. 419; *Maul* v. *Rider*, 51 Pa. St. 377; *Page* v. *Webster*, 8 Mich. 363; *Butler* v. *Porter*, 13 Mich. 292; *Dubois* v. *Campan*, 24 Mich. 360; *Baker* v. *Whiting*, 3 Sumn. 475; *Downer* v. *Smith*, 38 Vt. 464.

This principle has been modified in Pennsylvania, where it has been held, that after a sale of land for taxes to a stranger, and the time for redemption has passed, one of the tenants in common may purchase the land from the stranger, who has received his deed, and such purchase will not enure to the benefit of the other tenants in common. *Kirkpatrick* v. *Mathart*, 4 W. & S. 251; *Reinbolt* v. *Improvement Co.*, 29 Pa. St. 139.

It is also held that the heir can not acquire a tax-title to the

land descended to himself and others from his ancestors. *Dubois* v. *Campan*, 24 Mich. 360.

It has been held that a mortgagee can not buy in lands under mortgage at a tax-sale of such land and defeat the mortgager. *Fry* v. *Bank*, 11 Ill. 367.

The grantee of a mortgager of lands under mortgage, can not take title as against the mortgagee by tax-deed for taxes, which the mortgager or those holding under him were in duty bound to pay. *Avery* v. *Judd*, 21 Wis. 264.

The agent of the owner of land can not acquire tax-title to the land for which he is agent. *Krutz* v. *Fisher*, 8 Kans. 90; *McMahon* v. *McGraw*, 26 Wis. 614; *Morris* v. *Joseph*, 1 W. Va. 256; *Franks* v. *Morris*, 9 W. Va. 664.

A party, who sued out an injunction to restrain the enforcement of a mechanic's lien and, pending the injunction, obtained a tax-deed for the property, was held to be guilty of attempting an unconscientious advantage and was not allowed to use his tax-title to defeat the mechanic's lien, and the tax-title was held to inure to the benefit of the parties interested in the land. *McLaughlin* v. *Green*, 48 Miss. 175.

It has also been held uniformly, that a person leasing lands and bound to pay the taxes could not acquire a tax-title to the land during the continuance of the lease. *Crithers* v. *Weaver*, 7 Kan. 110; *Williamson* v. *Russell*, 18 W. Va. 612.

In *Cooley* v. *Waterman*, 16 Mich. 366, it was held, that where the owner of a distinct tract of land neglects to pay his taxes thereon, and the same is sold jointly with the land of others for the non-payment of taxes, and he becomes the purchaser of the whole, the sale is void, the purchaser being in default in not paying his own tax. In delivering the opinion of the court, Graves, judge, said: "The counsel for the defendant endeavored to distinguish this case from *Page* v. *Webster*, 8 Mich. 263, and *Butler* v. *Porter*, 13 *Id.* 292.: He took the position that these cases were both decided on the ground of ownership by the parties as tenants in common and the like. It will be seen however in recurring to the opinion of the majority of the court in the last suit that such was not the case. At page 302 my brother Christiancy speaking for a majority of the court uses this language: "But to say nothing of the tax-titles, he (Butler) had a good

title to one undivided third of the lot; and the tax on one third having been paid by Guild, it is evident his tax-purchase of two thirds for the taxes of the year 1852, must *have included his own one third,* for the non-payment of the tax upon which, *he was himself in default* to the State. This brings this sale *precisely within the letter and spirit* of the rule laid down by this court in *Page* v. *Webster,* 8 Mich. 263. *As owner of the one third, it was his duty* to have paid his portion of the tax before sale. It is insisted by counsel for the plaintiff in error (defendant below,) that this duty is only imposed by possession. This is not the ground of the decision in *Page* v. *Webster.* The *duty springs* from *ownership.* The sale is an entire thing *based upon the delinquency* in the payment of the taxes for which the sale is made, *and the purchaser can not be allowed to acquire the title of others in the property by a sale based in part upon his own default.* We are entirely satisfied with the *principle* of that decision, and see no reason for departing from it.  *  *  If the two parcels, separately owned by the parties, are so placed as to be *involved in the same default, and the same sale,* as in this instance, the case must be governed by the rule applied under the like circumstances when the estates of the parties are in the *same* parcel."

In *Varney* v. *Stevens,* 22 Me. 331, it was held that a life-tenant was bound to pay the taxes and could not acquire title of the land at a tax-sale. In that case it appeared, that Johnathan Varney by his will devised the whole of his real estate to his wife, Derothy. Varney, for life. The demandant, Jonathan Varney, was an heir at law of the testator. Some time after the death of the testator, the defendant Isaac Stevens married the widow, who was the life-tenant. Stevens offered in evidence against the demand a deed for the demanded premises from Woodbury,Collector of the United States direct tax to David Howe dated August 11, 1818, also a deed from ˙Howe to Staples of same premises dated same day, and a deed from Staples to Isaac Stevens for same premises dated January 9, 1819. All the deeds were duly acknowledged and recorded. The deeds were ruled out by the trial-court, and the tenant thereby became defaulted, but the default was to be taken off, if the deeds ought to have been admitted in evidence and could

have availed the tenant by way of defence or as a foundation for a claim for betterments made by him since the deed from Staples to him. In delivering the opinion of the court Shepley, J., said :

"The tenant offered certain deeds showing a sale of the premises by a collector of taxes and a release of that title to himself. If they had been admitted he would have taken under such re-lease according to his title, and the reversioners according to theirs. 'A re-lease of a right made to a particular tenant for life, or in tail, shall aid and benefit him, or them, in the remainder.' Co. Litt. sec. 453 and 267 b. It was moreover the duty of the tenant for life to cause all taxes assessed upon the estate, during his tenancy to be paid, and by neglecting it, and thereby subjecting the estate to a sale he committed a wrong against the reversioners. And when he received a release of the title, if any was acquired under that sale, he would be considered as intending to discharge his duty by relieving the estate from that incumbrance. To neglect to pay the taxes for the purpose of causing a sale of the estate to enable him to destroy the rights of the reversioners, would have been to commit a fraud upon their rights. This is not to be presumed. On the contrary he must be presumed to have intended by procuring that release, to extinguish the title under that sale."

Battin and Holdridge, as the record shows, were interested with the other parties mentioned in the declaration of trusts as purchasers of the 1,250 acres of land from Hobden. The deed by agreement of the parties was made to them to hold the land in trust for themselves and the other purchasers. They held the naked legal title and executed a declaration of trust, that showed for what purpose they held it. If the deed had been made directly to the parties, who purchased, they would have been joint-tenants or tenants in common. In equity for the purposes of this suit they must be regarded as tenants in common, and the rule, which we have above referred to, well sustained by authority must govern. A tenant in common can not during such tenancy acquire a tax-title to the land so held, so as to defeat the other tenants in common ; and such purchase of the land, either at the tax-sale or of a stranger is a redemption of the land and

will enure to the benefit of all the tenants in common. This rule will also include the Haselton Petroleum Company, for the record shows, that by consent of the parties interested said company bought an undivided 416 67-100 acres in said tract of 1,250, thereby making said company also a tenant in common.

In this case the question does not arise, that was decided in 4 S. & W. and 29 Pa. St., *supra*, that where land owned by tenants in common had been bought by a stranger at the tax-sale, and the time for redemption has passed, and the stranger receives his tax-deed, then one tenant in common might defeat the title of the others by buying the land from the stranger. The Pennsylvania cases, as far as I have found, are not in accord with the current of authority. But this is entirely a different case. Here the sale was made to strangers, Harris and Hitchcock, for $13.51, on September 10, 1867. On the same day for the expressed consideration of $17.00, Harris and Hitchcock assigned the sheriff's receipt to William A. Righter. At that moment the land was redeemed for the benefit of all the tenants in common. Righter could not legally transfer that receipt to any one. The evidence from the exhibits filed is very strong, that Righter and Fogg had conspired to possess themselves of the whole title to said land. After the time for redemption had expired, to-wit: on November 23, 1869, instead of asking for a deed himself, Righter assigned the receipt to Horatio N. Twombley, who on January 22, 1870, obtained the tax-deed. He held the said deed until June 7, 1881, when for the consideration of $1.00, he conveyed without general warranty by metes and bounds 416 68-100 acres of said land to the defendant, William A. Righter. The bill alleges he conveyed the residue of the land to the defendant Fogg, who admits it. The deed is not exhibited. Battin says in his deposition: "He learned that Fogg claimed to have a tax-deed for that part of the land not claimed by Righter, Twombley having parted with all his claim." The court did not err in cancelling said deeds, and declaring that Battin, as surviving trustee, held said lands for the parties interested therein.

It is not clear under the circumstances of this case, whether the taxes ought to have been refunded to Righter; it is not

except as to the $17.00, shown that he paid any. For this of course the decree would not be reversed. Whatever taxes Righter and Fogg have paid, with any other legitimate expenses incurred by them, if any, for the benefit of all the tenants in common, they may recover in a suit brought for that purpose. The purpose of this suit was to remove a cloud from the title to the land. We see no error in the decree for which it should be reversed, and it is therefore affirmed.

AFFIRMED.

Woods, JUDGE, Dissenting :

While fully concurring with President Johnson in the conclusion, that, if one of several tenants in common purchases the land held in common in his own name or from a stranger, who purchased the same at a sale thereof for the non-payment of taxes assessed thereon, such title so acquired will enure to the benefit of all the tenants in common, and that the circumstances in this case bring it within this rule of law, I am unable to concur with him in so much of his opinion as tends to establish the proposition that the plaintiff's exhibit, " C. C.," with the certificate of the clerk of the county court of Ritchie county thereto annexed, filed as part of his bill, and which is fully set out in the statement of this case, was only "secondary" evidence of the redemption of the 1,250 acres of land, and was inadmissible as evidence of that fact, until the absence of the original duplicate receipt showing the redemption of the land, which the law requires shall be filed in the clerk's office, has been satisfactorily accounted for ; nor am I able to concur with him in his views that these original duplicate receipts preserved in such clerk's office are the best evidence of the redemption of the lands mentioned therein, or that the " list " of such redemptions required by sec. 16 of ch. 31 of the Code to be made " in the month of June in each year in which real estate is required to be sold for the non-payment of taxes thereon," is not primary evidence of the redemption of the lands mentioned therein.

It seems clear to me, that in regard to all matters in relation to the assessment and collection of taxes on lands, the policy of the law is, that in every county the clerk's office of the county court (or formerly the recorder's office) thereof, shall contain a record of all the several tracts of land in such county; the amount of taxes assessed thereon for each year; the persons in whose names the taxes were assessed; which if any of the lands has been returned delinquent and sold for the non-payment of the taxes thereon; which tracts at such sale, were purchased by the State, and which by individuals; which of the parcels so sold to individuals has been redeemed from such purchaser, or his assignees, either by payment to him in person or to said recorder or clerk of the amount necessary to redeem the same, and when the same was so paid; and when and to whom the lands so purchased and not redeemed have been conveyed. The evidence of these several facts is alike necessary for the protection of the interest of the State, the purchaser, and of the land-owner, whose lands may have been sold for the non-payment of the taxes thereon assessed. Accordingly the assessor of each county is required every year to make out his land-books and to enter therein for taxation every tract of land in his county, its valuation, the name of the owner, and the amount of taxes assessed on each parcel for that year; one copy of which is preserved in the said clerk's office, and another forwarded to the auditor. So the sheriff of each county is required during each year to return a "list" of all the real estate in his county, delinquent for the non-payment of the taxes thereon for that year. The original list when approved, is required to be preserved by the clerk of the county court in his office. So also, the "lists" required to be made by the sheriff of all lands sold by him for delinquent taxes, with the names of the purchasers, the quantity of each tract sold, the price thereof, and the dates when the same were sold. All these several lists are required to be made and preserved in said clerk's office; and they become muniments of title of which every person is bound to take notice, and in which the whole community is more or less interested. Especially is this true in regard to the persons, whose lands have been sold for the non-payment of such taxes, and the purchasers

thereof at such sale. In all cases where lands have been so sold for delinquent taxes and purchased by individuals, and subsequently redeemed from them, it would seem that the same policy of the law, should preserve in convenient and enduring form the evidence of the fact that they have been so redeemed. Accordingly the law requires, that of the duplicate receipts required to be executed showing the redemption of each parcel of land so redeemed, one of them shall be filed in the office of said clerk on or before the day on which the right to redeem the same will expire, and there shall be endorsed thereon by such clerk " the fact and time of such filing." It is not to be denied that this duplicate receipt, so endorsed and filed in such office, is of itself evidence of the fact of such redemption ; but I can not concur in the opinion that it is alone the best evidence of that fact. From the character of such papers, if no other record of the facts contained therein was made, they would in a series of years accumulate in the clerk's office, and would in all probability be lost, mislaid or destroyed, or if they were even all preserved, they would in all probability become almost inaccessible, for all practical purposes. This evil is avoided by the provision contained in sec. 16 of ch. 31 of the Code, which provides that the " recorder, (now the clerk of the county court,) of every county shall in the month of June in each year in which real estate is required to be sold for the non-payment of taxes thereon, make a list of all real estate redeemed as aforesaid not before included in a similar list." While it is not in express terms required that this list shall be *preserved* by the clerk in his office, yet this duty is clearly implied, for he is to include in *such list*, such redemptions as have not before been included in a similar list, which would have been a meaningless injunction if he had not been required to preserve in his office, such former similar lists. I conclude therefore that this " list " of lands so redeemed, required to be made by such clerk, although it may have been compiled from the duplicate receipts of such redemptions, filed in his office, is a document or memorial required by law to be made by such clerk and preserved in his office, and that the list itself is primary evidence of the facts appearing on the face thereof, which the law requires to be stated

therein, and that a copy thereof, attested by the clerk of the county court in whose office the same is, may be admitted as evidence in lieu of the original, without in any manner accounting for the absence of the original duplicate receipts, of any of them, from which such list may have been compiled; and such original list, as an instrument of evidence of the facts appearing on the face thereof which the law requires to be stated therein, is wholly independent of the duplicate receipts from which it may have been prepared, and does not upon the face thereof in any manner indicate that better evidence of the facts stated therein " remains behind."

I am therefore further of opinion that the copy of the plaintiff's exhibit "C. C." with the attestation of the clerk of the county court of Ritchie county thereto attached, was competent evidence of the redemption of said land, as therein stated.

Judges Green and Snyder concurred with Judge Woods.